664 P.2d 281

**FIRST SECURITY BANK OF IDAHO, N.A., Plaintiff-Respondent-Cross Appellant,**

v.

**ABSCO WAREHOUSE, INC., Defendant-Appellant-Cross Respondent.**

No. 14628.

Court of Appeals of Idaho.

May 31, 1983.

854

Royce B. Lee, Ririe, Lee, Jenkins & Ball, Idaho Falls, and Randall Gaither, Salt Lake City, Utah, for defendant-appellant-cross respondent.

Kevin T. Sullivan, St. Clair, Hiller, Wood & McGrath, Idaho Falls, for plaintiff-respondent-cross appellant.

WALTERS, Chief Judge.

This matter involves competing claims of two creditors to the inventory of a retail business. We are asked to determine whether the district court erred in granting

summary judgment to the First Security Bank of Idaho, N.A. The bank was a holder of a perfected security interest in the inventory, as against Absco Warehouse, a supplier to whom the debtor returned the inventory for credit on an open account. By cross-appeal the bank contends the court erred in failing to award attorney fees to the bank. The bank also requests attorney fees on appeal. We affirm the summary judgment, including the district court's refusal to award attorney fees, and we similarly refuse to award attorney fees on appeal.

The debtor, Bruce Elliot, doing business as Action Automotive Paint and Supply, purchased automotive paint and supplies from Absco Warehouse, on open account, between March 5, 1979, and October 31, 1980. Credits to the account resulted either from cash payments, or from the return to Absco of merchandise which had been purchased on credit. On September 19, 1980, Elliot apparently returned to Absco all the inventory he had on hand which had been purchased from Absco, and received a credit in the amount of $12,469.93.

Almost a year earlier, on October 17, 1979, Elliot had executed a promissory note and security agreement in favor of the bank.[1] As collateral, the bank was given a security interest in Elliot's accounts receivable and in "all inventory of paint, supplies, accessories and equipment, not limited to specific brands or models, now held in inventory of debtor and hereafter acquired in the operation of business." It is not disputed that the bank properly perfected its security interest.

Elliot filed for bankruptcy on April 2, 1981. For reasons beyond the scope of this opinion, the trustee in bankruptcy determined that the debtor had no interest in the inventory and accounts receivable, and abandoned those items as assets in the bankruptcy. Thereafter, the bank applied the proceeds of the accounts receivable to the principal amount of its note, leaving $7,654.08 due to the bank. The bank then filed suit against Absco, alleging that Absco had disposed of the inventory, and seeking damages for conversion.

Absco answered the complaint, asserting, in essence, that the bank had waived its security interest by acquiescing in the course of conduct between Absco and Elliot involving the return of merchandise for credit. The bank filed a motion for summary judgment, supporting it by an affidavit stating that the bank was unaware of the alleged course of conduct, and asserting that it had not waived its security interest. In response to the bank's motion for summary judgment, Absco filed an affidavit restating the existence of the course of conduct between it and Elliot, but failing to elaborate on the bank's alleged acquiescence in the arrangement.

The district court held Absco had failed to show it had evidence, which would be admissible at trial, that the bank had in fact waived its security interest. *See* I.R. C.P. 56(e). Therefore, the district court granted the summary judgment to the bank.

■ On an appeal from summary judgment, we must determine whether the pleadings and affidavits present a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. The facts, and all reasonable inferences from the facts, must be liberally construed in favor of the party opposing the motion. *Pullin v. Victor,* 103 Idaho 879, 655 P.2d 86 (Ct.App.1982). To constitute a material issue of fact, a dispute concerning a matter which would determine the cause must be disclosed by the pleadings. *Bennett v. Bliss,* 103 Idaho 358, 647 P.2d 814 (Ct.App.1982).

Here Absco attacks the summary judgment in two respects. First, Absco argues that the alleged course of dealings between Elliot and Absco, allowing the return of

---

1. To consummate the loan with the bank, Elliot had provided a balance sheet to the bank listing his inventory as of August 31, 1979, at a value of $17,858.13. A subsequent balance sheet, provided to the bank as of December 31, 1979, showed an increased inventory value of $22,049.93.

merchandise for credit, was authorized by the bank's security agreement. Second, Absco argues that even if the return of the inventory was not authorized by the security agreement, sufficient circumstances exist to find that the bank waived the protection afforded it by the security agreement.

We address first the issue of whether the alleged course of dealings between Elliot and Absco was authorized by the security agreement. I.C. § 28–9–306(2) provides that a security interest in collateral continues notwithstanding the sale, exchange or disposition of the collateral unless the secured party authorizes the disposition. The security agreement between the bank and Elliot provided that the debtor, Elliot, "may sell and dispose of said collateral in the ordinary course of business ... so long as the terms and conditions of this security agreement are kept and performed by debtor ..." and that "[a]ll sales shall be for cash or upon credit for a term not exceeding [thirty] days...." Thus, the only disposition of the collateral, authorized by the security agreement, was either by sale in the "ordinary course of business" for cash or upon short-term credit, or by other disposition "in the ordinary course of business."

■ The term "ordinary course of business" is treated in I.C. § 28–1–201(9). That section provides that a transfer in bulk, a transfer as security for a debt, or a transfer in total or in partial satisfaction of a debt, is not a sale to a buyer in the ordinary course of business. A transfer in bulk is defined to include "any transfer ... not in the ordinary course of transferor's business of a major part in value of the materials, supplies, merchandise or other inventory" of the business. I.C. § 28–6–102(1). It is undisputed that the return of inventory to Absco was not by way of a "sale" to Absco, but rather was made to satisfy the existing debt which Elliot owed Absco for purchases on account. Also, considering the balance sheets provided by Elliot to the bank (footnote 1, *supra*), it is reasonable to infer that the inventory returned to Absco was a major part in value of the material, supplies, merchandise or other inventory in Elliot's

business. We conclude that the return of inventory to Absco, because it was a major part in value of Elliot's business inventory and was transferred to satisfy an existing debt due to Absco, was not in the "ordinary course" of Elliot's business, as that term is applied in the commercial code, and therefore was not authorized by the express terms of the security agreement.

Second, Absco contends that the bank knew or should have known that the course of dealings between Absco and Elliot included returns of merchandise for credit. Absco asserts that visits to Elliot's business by the bank's officer, and inspections which could have been made by the bank of account statements provided to Elliot by Absco, should have given notice to the bank of the inventory returns.

Section 28–1–201(25) of the Idaho Uniform Commercial Code provides that a person has "notice" of a fact when he has actual knowledge, or has received notice, of that fact, or where, from all the facts and circumstances known to him at the time in question, he has reason to know that it exists. The bank's officer, by affidavit, stated that although he visited Elliot's business approximately once every month beginning in October, 1979, he observed no noticeable reduction of inventory and was never notified that merchandise and inventory was being returned for credit. He declared that on October 14, 1980, he visited the business premises and discovered that it had closed its doors to business, and that all merchandise and inventory had been removed. He stated that the business failure came without warning, as Elliot was current and not delinquent on his note with the bank.

■ It was incumbent upon Absco, in response to the bank officer's denial of knowledge of Elliot's return of inventory, to make a showing—in detail as specific as that of the bank—that the bank had such knowledge. Absco made no such showing. In *Petricevich v. Salmon River Canal Company, Inc.,* 92 Idaho 865, 871, 452 P.2d 362, 368 (1969), our Supreme Court said "summary judgment will be granted whenever

on the basis of the evidence before the court a directed verdict would be warranted or whenever reasonable men could not disagree as to the facts." In our view, reasonable persons would not reach different conclusions from the record made on the motion for summary judgment. Therefore, we uphold the summary judgment.

On cross-appeal, the bank contends that the district court erred by refusing to award attorney fees to the bank on entry of the summary judgment. We note that the complaint filed by the bank against Absco contains a general allegation that the bank had employed counsel to pursue the action, and that the bank had and would incur attorney fees; however, there is nothing else contained in the record to support the bank's position that it was entitled to a recovery of attorney fees. No contractual right to attorney fees was claimed by the bank, therefore its right to such fees would lie under I.C. § 12–121, the applicable statute. Awards under the statute are discretionary, subject to the criteria of Rule 54(e), I.R.C.P. That rule requires findings where fees *are* awarded, but is silent when fees are not awarded. *Compare* Rule 54(d)(1)(D) which requires the court to make express findings why specific items of discretionary costs are, or are not, allowed.

■ In our view, if a prevailing party makes a specific contention that one or more of the criteria of Rule 54(e) have been satisfied, the court should state its reasons for declining to award fees. Otherwise, the appellate court has no meaningful basis to review the trial court's exercise of discretion. In the present case, no such specific contention has been made by the bank. We cannot presume, from a silent record, that the court erred. *Payette Farms Co. v. Conter,* 103 Idaho 148, 645 P.2d 888 (1982). We therefore uphold the refusal of the district court to award attorney fees to the bank.

■ Finally, the bank requests an award of attorney fees on appeal. This case involved a substantial issue as to the concept of sales in the "ordinary course of business." We are not left with the abiding belief that the appeal was brought frivolously, unreasonably, or without foundation. *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979). We therefore decline to award attorney fees on appeal to the bank.

The judgment is affirmed; costs to respondent, cross-appellant, First Security Bank.

SWANSTROM and BURNETT, JJ., concur.