Ron FRANTZ and Fanita Frantz,
Appellants (Defendants),

Midwest Uncuts, Inc., an Iowa
corporation (Defendant),

v.

FIRST NATIONAL BANK & TRUST
COMPANY OF WYOMING,
Appellee (Plaintiff).

No. 84–32.

Supreme Court of Wyoming.

Sept. 28, 1984.

Richard Wolf and Martin J. McClain, Cheyenne, for appellants; oral argument by Martin J. McClain, Cheyenne.

Todd S. Welch of Loomis, Lazear, Wilson & Pickett, Cheyenne, for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

CARDINE, Justice.

This is an appeal from a judgment in favor of First National Bank and Trust Company of Wyoming (hereinafter bank) against appellants Frantzes based upon the bank's secured interest in the balance due upon the purchase of the assets of Capitol Optical by appellants. We will affirm.

Appellants raise a single issue on appeal:

"Whether a secured creditor can collect from the purchaser of a business, which had assets pledged as collateral to the creditor, the purchase price still to be paid pursuant to a promissory note."

Tommy D. and Mari Ann Carver, upon borrowing money, executed and delivered to the bank in June of 1981 their installment promissory note, security agreement, and financing statement. It is not disputed that the security agreement and financing statement were signed by the Carvers and the bank, and was properly filed with the Laramie County clerk, thereby creating a perfected security interest. The collateral for this security agreement and financing statement was all accounts receivable and all equipment and inventory "now owned or hereafter acquired." The collateral related to three optical shops owned by the Carvers; one of these shops was Capitol Optical.

In February 1982, the Carvers sold the assets of Capitol Optical to Ron and Fanita Frantz. The Frantzes were not aware of the bank loan to the Carvers or the security agreement. The Carvers and Frantzes entered into a security agreement and financing statement. As consideration, the Frantzes gave the Carvers $5,000 down and signed a contract providing for the remaining $40,000 to be paid at the rate of $915 per month with interest at 18% per annum. The security agreement and fi-

nancing statement between the Carvers and the Frantzes indicated that a negotiable promissory note evidencing this agreement was in existence. Mr. Frantz testified that he did not remember seeing or signing a promissory note. The Frantzes made monthly payments of $915 from March 1982 until October 1982. On October 12, 1982, the Carvers filed for bankruptcy. Shortly afterwards, a senior vice president for the bank contacted Mr. Frantz and informed him that the optical shop's inventory and equipment was included in the collateral for the loan between the bank and the Carvers. At that time the Frantzes ceased paying the debt to the Carvers on the rationale that the Carvers had breached the purchase agreement by not revealing the existence of the security interest in the assets of the optical shop.

The bank petitioned the bankruptcy court for an order permitting it to foreclose on the collateral. A hearing was held at which time the attorney for the Carvers stated that the Carvers had no title to the collateral, did not claim any interest in the assets of Capitol Optical, and moved that the case be dismissed as to debtors Carvers. The bankruptcy court stated in its order of dismissal that,

"Neither plaintiff nor the Frantzes are parties in the bankruptcy case. The collateral which is the subject of the proceeding is not property of the bankruptcy estate. Therefore, the bankruptcy court does not have jurisdiction over any of the remaining parties or the property."

The bank then initiated this lawsuit against the Frantzes in district court contending that under its security agreement with the Carvers it was entitled to either the collateral or the proceeds from the sale of the collateral. Appellants defended on the theory that the bank was only entitled to take possession of the collateral but that it did not have a claim to the $40,000 owed under the security agreement and financing statement.

The trial court found that the security agreement and financing statement signed by appellants could be considered as non-cash proceeds from the sale of collateral, as that term is defined in § 34–21–935(a), W.S.1977, 1983 Cum.Supp. The court also found that although the bank could have proceeded against the obligors, that was not their exclusive remedy.

Section 34–21–935, W.S.1977, 1983 Cum.Supp. (U.C.C. § 9–306) states in part:

"(a) 'Proceeds' includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement. Money, checks, deposit accounts and the like are 'cash proceeds'. All other proceeds are 'non-cash proceeds'.

"(b) Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor."

The debtor's interest in property, which is subject to a perfected security interest, may be validly transferred without the consent of the secured party, contrary contractual provisions notwithstanding. *First Pennsylvania Banking & Trust Co. v. Liberati*, 282 Pa.Super. 198, 422 A.2d 1074 (1980). A perfected security interest continues in the collateral following a change in ownership. *City National Bank and Trust Company, Norman, Oklahoma v. Pyle*, 25 Wash.App. 583, 609 P.2d 966 (1980). The perfected security interest continues in the collateral even though it has been sold unless the sale is authorized or the buyer is in the ordinary course of business. *Walter E. Heller Western, Inc. v. Bohemia, Inc.*, 61 Or.App. 57, 655 P.2d 1073 (1982). A buyer is not

considered to be in the ordinary course of business when the transfer includes the bulk of inventory. In that case the purchaser's interest is junior to the secured interest of the bank. *Community Bank v. Jones,* 278 Or. 647, 566 P.2d 470 (1977). A security agreement is effective according to its terms between the parties and subsequent purchasers if properly perfected by filing. The subsequent purchasers are presumed to have notice and are, therefore, subject to the provisions of the agreement. *Gorham v. Denha,* 77 Mich.App. 264, 258 N.W.2d 196 (1977).

 A secured party ordinarily may proceed against the debtor to either collect the debt or to obtain the proceeds from the transfer or maintain an action against the purchaser for repossession of the collateral or an action for conversion. *American East India Corp. v. Ideal Shoe Co.,* 400 F.Supp. 141 (1975). Ordinarily one who acquires by purchase or otherwise is liable in trover or conversion for the value of the property or the amount paid. *South Omaha Production Credit Ass'n v. Tyson's, Inc.,* 189 Neb. 702, 204 N.W.2d 806 (1973).

 A secured creditor is not required to elect a remedy in enforcing his interest. He can take any permitted action or combination of actions. Although he is entitled to only one satisfaction for the underlying debt, he may seek it in different ways. *Citicorp Homeowners, Inc. v. Western Surety Co.,* 131 Ariz. 334, 641 P.2d 248 (1981).

> "The secured party may claim both proceeds and collateral, but may of course have only one satisfaction." 1972 Official Comment, Uniform Commercial Code (U.L.A.) § 9–306.

A secured party, upon the default of a debtor, may reduce a claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure. *Clark Jewelers v. Satterthwaite,* 8 Kan. App.2d 569, 662 P.2d 1301 (1983).

Appellants concede that:

> "* * * Appellee possessed a security interest in all accounts receivable of Capitol Optical and two other optical shops, as well as in their inventory and equipment. * * * Further, there is no dispute that the Carvers sold the Appellants the inventory, the equipment and some of the accounts receivable of Capitol Optical. Appellants also admit that Appellee had a security interest in the equipment, inventory, and accounts receivable which the Carvers transferred to them."

Appellants contend, however, that the proceeds from the sale of this collateral are in the form of a negotiable promissory note and that appellee must, therefore, sue the Carvers in order to obtain the note. Appellants further contend that without the negotiable promissory note, appellee may not sue appellants for payments under that instrument without proving that the note is lost, destroyed, or stolen. Finally, appellants contend that the bank's remedies are limited because of the rights which they, as third party, might have against the debtor.

In *First Security Bank of Idaho v. Absco Warehouse, Inc.,* 104 Idaho 853, 664 P.2d 281 (1983), a case similar to this one, the secured party-bank brought a conversion action against a supplier to whom the debtor had returned his inventory for credit on an open account. The debtor then filed for bankruptcy and thereafter the secured bank filed suit against the supplier. The court, after stating,

> "For reasons beyond the scope of this opinion, the trustee in bankruptcy determined that the debtor had no interest in the inventory and accounts receivable, and abandoned those items as assets in the bankruptcy." 664 P.2d at 283,

awarded the secured bank a summary judgment against the supplier.

In the present case, the secured bank attempted to establish its interest in the debt and recover in the bankruptcy proceedings. The debtors disclaimed any interest in the collateral; and the bankruptcy court, holding that the collateral was not part of the bankruptcy estate, dismissed

the bank's petition. The bank then sued and obtained judgment against the subsequent purchasers, appellants in this action.

█ It is immaterial that the bank did not obtain the promissory note, for appellants testified as follows:

"Q. Did you sign a promissory note for $40,000?

"A. I don't remember signing one.

"Q. Now, in your Answers to Interrogatories and in the Request for Admissions that were filed, you indicated—I asked the question, did you enter into a promissory note with Tommy D. Carver and Mari Ann Carver for $40,000, and your response at that time was yes.

"A. At that time, I thought that was part of the security agreement and everything. I was shown today a copy of what the promissory note was, and I don't remember seeing it before.

　　*　　*　　*　　*　　*　　*

"A. This is the contract between the Carvers and my wife and myself that we signed, this is all that I remember seeing at the time."

It is not clear whether or not a promissory note existed. Appellee had already attempted to assert a claim to the promissory note through the bankruptcy proceedings. At that time the bankruptcy court disclaimed jurisdiction. We cannot resolve this case on the basis of a promissory note that might not exist. Appellants testified that the security agreement and financing statement comprised the contract. They cannot now argue that appellee is precluded from judgment because it does not possess the note, the existence of which they deny. Appellants have always admitted the debt to the Carvers upon the purchase of the accounts receivable, assets and inventory of Capitol Optical. The money owing under their contract, therefore, is clearly "identifiable proceeds" from the sale of the collateral and, as such, subject to the bank's security interest as provided in

§ 34–21–935(b), W.S.1977, 1983 Cum.Supp., supra.

█ Appellants also sought to defend contending that the value of the collateral which they had in their possession was significantly less than the amount that the court ordered them to pay, and that they should have been allowed to present defenses to a claim upon the promissory note (which they said did not exist) against the Carvers. The only evidence they offered, however, was hearsay; and, when objection to the evidence was sustained, appellants made no offer of proof. The trial judge stated that:

"After having heard the evidence in this case, the Court fails to find as claimed by the defendants that they were induced to enter into the contract with the Carvers fraudulently. Further, the Court cannot see and does not understand how the action of the Carvers in filing bankruptcy constitutes a breach of the contract between Carvers and Frantzes. The Court has not been directed to any provision contained in the agreement of Carvers and Frantzes which would serve as a bar to relief under the Bankruptcy Act."

It is not disputed that the bank loaned a significant amount of money with the assets of Capitol Optical being security for the loan. Appellants bought the assets of Capitol Optical for the sum of $45,000, $5,000 being paid down with $40,000 to be paid pursuant to a signed contract at the rate of $915 a month. They made monthly payments from March 1982 until October 1982 without complaint. The judgment entered in this case requires only that they continue those payments as agreed.

We must, therefore, agree with the trial judge. Appellants' lack of notice concerning the bank's interest is not a basis for breach of contract; they are presumed to have notice of the perfected security interest. Appellants purchased the assets and inventory of Capitol Optical for the sum of $45,000, which was represented by a security agreement and financing statement. It should not matter to appellants whether

they pay the money owing to the Carvers or to the bank. If they had defenses, they did not develop them by discovery, adduce evidence with respect to the same, or preserve them in the record by offer of proof or otherwise.

██ Appellants took the assets of Capitol Optical subject to a prior perfected security interest of the bank; they are held to notice of that interest. The bank, having a valid interest in the property and in the proceeds from the sale of the property, is entitled to satisfy the debt out of either provided there may be but one satisfaction. The judgment, therefore, is affirmed.