708 P.2d 932

**KONIC INTERNATIONAL CORPORA-TION, dba Transtector Systems, Inc., Plaintiff-Appellant,**

v.

**SPOKANE COMPUTER SERVICES, INC., a Washington corporation, Defendant-Respondent,**

No. 15882.

Court of Appeals of Idaho.

Nov. 4, 1985.

R. Joseph Eisele, argued, and Mark A. Jackson, Coeur d'Alene, for plaintiff-appellant.

Pat W. Arney, Coeur d'Alene, for defendant-respondent.

WALTERS, Chief Judge.

Konic International Corporation sued Spokane Computer Services, Inc., to collect the price of an electrical device allegedly sold by Konic to Spokane Computer. The suit was tried before a magistrate sitting without a jury. The magistrate entered judgment for Spokane Computer, concluding there was no contract between the parties because of lack of apparent authority of an employee of Spokane Computer to purchase the device from Konic. The district court, on appeal, upheld the magistrate's judgment. On further appeal by Konic, we also affirm the magistrate's

judgment but base our result on reasoning different from that of the lower court.

The magistrate found the following facts. David Young, an employee of Spokane Computer, was instructed by his employer to investigate the possibility of purchasing a surge protector, a device which protects computers from damaging surges of electrical current. Young's investigation turned up several units priced from $50 to $200, none of which, however, were appropriate for his employer's needs. Young then contacted Konic. After discussing Spokane Computer's needs with a Konic engineer, Young was referred to one of Konic's salesmen. Later, after deciding on a certain unit, Young inquired as to the price of the selected item. The salesman responded, "fifty-six twenty." The salesman meant $5,620. Young in turn thought $56.20.

The salesman for Konic asked about Young's authority to order the equipment and was told that Young would have to get approval from one of his superiors. Young in turn prepared a purchase order for $56.20 and had it approved by the appropriate authority. Young telephoned the order and purchase order number to Konic who then shipped the equipment to Spokane Computer. However, because of internal processing procedures of both parties the discrepancy in prices was not discovered immediately. Spokane Computer received the surge protector and installed it in its office. The receipt and installation of the equipment occurred while the president of Spokane Computer was on vacation. Although the president's father, who was also chairman of the board of Spokane Computer, knew of the installation, he only inquired as to what the item was and who had ordered it. The president came back from vacation the day after the surge protector had been installed and placed in operation and was told of the purchase. He immediately ordered that power to the equipment be turned off because he realized that the equipment contained parts

which alone were worth more than $56 in value. Although the president then told Young to verify the price of the surge protector, Young failed to do so. Two weeks later, when Spokane Computer was processing its purchase order and Konic's invoice, the discrepancy between the amount on the invoice and the amount on the purchase order was discovered. The president of Spokane Computer then contacted Konic, told Konic that Young had no authority to order such equipment, that Spokane Computer did not want the equipment, and that Konic should remove it. Konic responded that Spokane Computer now owned the equipment and if the equipment was not paid for, Konic would sue for the price. Spokane Computer refused to pay and this litigation ensued.

Following trial, the magistrate found that Young had no actual, implied, or apparent authority to enter into the transaction and, therefore, Spokane Computer did not owe Konic for the equipment.[1] In reaching its decision, the magistrate also noted that when Spokane Computer acquired full knowledge of the facts, it took prompt action to disaffirm Young's purchase.

We agree with the magistrate's result. However, rather than base our decision on the agency principle of apparent authority, as did the trial court, we believe that more basic principles of contract are determinative in this case. "When the result reached by the trial court is correct, but entered on a different theory, we will affirm it on the correct theory." *Goodwin v. Nationwide Insurance Co.*, 104 Idaho 74, 83, 656 P.2d 135, 144 (Ct.App.1982).

Basically what is involved here is a failure of communication between the parties. A similar failure to communicate arose over 100 years ago in the celebrated case of *Raffles v. Wichelhaus*, 2 Hurl. 906, 159 Eng. Rep. 375 (1864) which has become better known as the case of the good ship "Peerless". In *Peerless*, the parties agreed on a sale of cotton which was to be deliv-

1. Although the trial court's decision was not explicit about possession of the equipment, the

district court, on appeal, determined that Konic was entitled to possession of the equipment.

ered from Bombay by the ship "Peerless". In fact, there were two ships named "Peerless" and each party, in agreeing to the sale, was referring to a different ship. Because the sailing time of the two ships was materially different, neither party was willing to agree to shipment by the "other" Peerless. The court ruled that, because each party had a different ship in mind at the time of the contract, there was in fact no binding contract. The *Peerless* rule later was incorporated into section 71 of the RESTATEMENT OF CONTRACTS and has now evolved into section 20 of RESTATEMENT (SECOND) OF CONTRACTS (1981). Section 20 states in part:

(1) There is no manifestation of mutual assent to an exchange if the parties attach materially different meanings to their manifestations and

(a) neither knows or has reason to know the meaning attached by the other.

Comment (c) to section 20 further explains that "even though the parties manifest mutual assent to the same words of agreement, there may be no contract because of a material difference of understanding as to the terms of the exchange." Another authority, Williston, discussing situations where a mistake will prevent formation of a contract, agrees that "where a phrase of contract ... is reasonably capable of different interpretations ... there is no contract." 1 S. WILLISTON, CONTRACTS § 95 (3d ed. 1957).

One commentator on the *Peerless* case, maintaining that the doctrine should be cautiously applied, indicates three principles about the case doctrine that are generally in agreement: (1) "the doctrine applies only when the parties have different understandings of their expression of agreement"; (2) the doctrine 'does not apply when one party's understanding, because of that party's fault, is less reasonable than the other party's understanding; and (3) parol evidence is admissible to establish the facts necessary to apply the rule. Young, *Equivocation in the Making of Agreements,* 64 COLUM. L. REV. 619 (1964).

The second principle indicates that the doctrine may be applicable to this case because, arguably, both parties' understandings were reasonable. Also, as pointed out by the district court, both parties were equally at fault in contributing to the resulting problems. The third principle is not relevant to the present case.

The first principle is not only directly applicable to the present case, but also corresponds to reasoning used in *Snoderly v. Bower,* 30 Idaho 484, 166 P. 265 (1917), citing the *Peerless* case. In *Snoderly* the court dealt with two parties who had contracted to grow hay. The parties had agreed that, after the hay was harvested and stacked, the hay would "be measured according to government rule." Unfortunately, there were several government rules in use in the vicinity for measuring hay. The court determined that "there was no meeting of the minds of the parties on the question as to what constituted the 'government rule' when the contract was entered into, and that provision in the contract would therefore be void." 30 Idaho at 488, 166 P. at 266, *citing Peerless. Snoderly* is somewhat different from the present case because in *Snoderly* both parties apparently wished to keep the benefits of their contract. Our Supreme Court therefore remanded for a determination of the reasonable value of services rendered. In the present case, Spokane Computer did not wish to retain the benefits of Konic's equipment as evidenced by the president's instruction that power to the equipment be turned off immediately and his demand on Konic to remove the equipment.

■ In the present case, both parties attributed different meanings to the same term, "fifty-six twenty." Thus, there was no meeting of the minds of the parties. With a hundred fold difference in the two prices, obviously price was a material term. Because the "fifty-six twenty" designation was a material term expressed in an ambiguous form to which two meanings were obviously applied, we conclude that no contract between the parties was ever formed. Accordingly, we do not reach the issue of

whether Young had authority to order the equipment.

Konic asserts that the conduct of the parties reflects the formation of a contract and, this being a "transaction in goods," the provisions of the Uniform Commercial Code should apply. Konic also raises issues based on implied-in-law contract, estoppel, and mistake—all arguments which have as their basis some form of contract. We conclude that the foregoing analysis is equally applicable to these arguments. The mutual misunderstanding of the parties was so basic and so material that any agreement the parties thought they had reached was merely an illusion.

Although Konic asserts that Spokane Computer was unjustly enriched, the magistrate found no evidence establishing unjust enrichment of Spokane Computer which would support any restitution to Konic. We have held that restitution may sometimes be required even though no contract has materialized. *Dursteler v. Dursteler*, 108 Idaho 230, 697 P.2d 1244 (Ct. App.1985). However, our review of the record in this case discloses no evidence warranting such a remedy. Therefore, Konic's other theories of recovery are equally unpersuasive.

One final point concerns an issue of attorney fees. Konic contends the magistrate erred in awarding attorney fees to Spokane Computer. However, we have reviewed the record as presented to the district court and can find no evidence that this issue was framed or presented to that court in the appeal from the magistrate division. We will not review issues different from those presented to the intermediate appellate court. *Marvin Centers v. Yehezkely*, 109 Idaho 216, 706 P.2d 105, (Ct.App.1985). We therefore decline to review the propriety of the magistrate's award of fees to Spokane Computer.

Because this was a suit on a contract for the alleged sale of goods, Spokane Computer is entitled to an award of attorney fees on appeal as the prevailing party, even though no liability under a contract

was established. I.C. § 12–120(2). *See e.g., Boise Truck & Equipment, Inc. v. Hafer Logging, Inc.*, 107 Idaho 824, 693 P.2d 470 (Ct.App.1984). The decision of the district court is affirmed. Costs and attorney fees to respondent, Spokane Computer.

SWANSTROM and BURNETT, JJ., concur.