723 P.2d 908

**James SEITZ, Plaintiff-Appellant,**

v.

**Elmer STECKLEIN and Jane Doe Stecklein, Husband and Wife, and Stanford Watt and Jane Doe Watt, Husband and Wife, Defendants-Respondents,**

and

**Farmers Exchange, Inc., an Idaho corporation, Blake Boyce and Jane Doe Boyce, Husband and Wife, Defendants.**

No. 15905.

Court of Appeals of Idaho.

July 22, 1986.

Alan E. Barber, Idaho Falls, for plaintiff-appellant.

Bart M. Davis, Idaho Falls, for defendants-respondents.

SWANSTROM, Judge.

James Seitz brought an action in the magistrate division to recover a farm disc or its value from Farmers Exchange, Inc., and Blake Boyce. Boyce was an owner or manager of Farmers Exchange, a business which bought and sold farming implements. Respondents Elmer Stecklein and Stanford Watt were also named as defendants because Stecklein had acquired the disc from Farmers Exchange and then sold it to Watt. A default judgment was entered by a magistrate against Farmers Exchange and the Boyces.[1] The magistrate granted Stecklein's and Watt's motion to

dismiss Seitz's complaint as to them. The magistrate held that Seitz had sold the disc to Farmers Exchange without retaining the title or perfecting a security interest. Seitz appealed to the district court where the judgment of dismissal was affirmed.

On appeal to this Court Seitz contends that when Farmers Exchange sold Seitz's disc to Stecklein it was dealing with property it held in entrustment from Seitz. I.C. § 28-2-403.[2] According to Seitz, the magistrate erred by failing to so rule. Secondly, Seitz contends that even if Farmers Exchange acquired title to the disc from Seitz, it was only a "voidable title" as the term is used in subsection (1) of I.C. § 28-2-403. He argues that Stecklein was not a "good faith purchaser for value" and, therefore, the magistrate erred in ruling that Stecklein acquired good title from Farmers Exchange. We find no reversible error on the part of the magistrate. Accordingly, we affirm.

In October 1982 Seitz delivered an International Harvester farm disc to Farmers Exchange "to be sold." On December 14 Elmer Stecklein went to Farmers Exchange where he talked to Blake Boyce about acquiring the disc. In the presence of Stecklein, Boyce placed a telephone call, apparently to Seitz. According to Stecklein's deposition, Boyce agreed during the tele-

---

**1.** The default judgment against Farmers Exchange was later set aside, presumably because of a bankruptcy proceeding. The record does not disclose the relationship between Blake Boyce and Farmers Exchange. For purposes of this opinion we need not determine whether Boyce was acting as owner, an officer or an agent of Farmers Exchange.

**2.** I.C. § 28-2-403:
(1) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though
(a) the transferor was deceived as to the identity of the purchaser, or
(b) the delivery was in exchange for a check which is later dishonored, or

(c) it was agreed that the transaction was to be a "cash sale," or
(d) the delivery was procured through fraud punishable as larcenous under the criminal law.
(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.
(3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery [or] acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.
(4) The rights of other purchasers of goods and of lien creditors are governed by the chapters on Secured Transactions (chapter 9), Bulk Transfers (chapter 6) and Documents of Title (chapter 7).

phone conversation that Farmers Exchange would pay Seitz $500 a month for the disc until Seitz was paid in full. When the phone call was completed Boyce sold the disc to Stecklein, giving him a bill of sale. The consideration Stecklein gave for the disc was cancellation of a pre-existing debt owed to him by Farmers Exchange in the approximate amount of $3,000.

The next day Farmers Exchange followed up its telephone agreement with Seitz by sending him a printed "Purchase Order" for his disc. This purchase order, dated December 15, 1982, named Farmers Exchange as the purchaser and was signed "Farmers Exchange Inc. by Blake Boyce." On December 22, Seitz indicated his acceptance as "seller" of the disc by signing and dating the purchase order. It recited that Seitz was to receive a $500 down payment and monthly payments of $500, with interest, until a "total cash price" of $3,000 was paid in full by Farmers Exchange. Seitz has never received any payment for the disc. When this suit was filed Stecklein no longer had the disc. He had sold it to Stanford Watt.

Stecklein and Watt moved to dismiss the complaint on the ground that the complaint failed to state a claim against them upon which relief could be granted. Where, as here, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56,...." I.R.C.P. 12(b). Because Seitz also moved for summary judgment against Stecklein and Watt, the magistrate was confronted with cross-motions for summary judgment. The standards for ruling on motions for summary judgment are well known and need not be repeated here. On appeal, we review the record before the magistrate independently of the district court decision. *First Interstate Bank of Idaho, N.A. v. West,* 107 Idaho 851, 693 P.2d 1053 (1984).

The magistrate dismissed Seitz's complaint against Stecklein and Watt, concluding that when Seitz accepted the purchase order tendered by Farmers Exchange the disc was at that time sold by Seitz to Farmers Exchange. The magistrate further held that Seitz, in signing the document, transferred his title to Farmers Exchange and had no cause of action against transferees who acquired ownership of the disc from Farmers Exchange.

While Seitz admits he delivered his disc to Farmers Exchange "to be sold," he contends that he never contemplated transferring title to Farmers Exchange. He further contends that Farmers Exchange did not have title to the disc on December 14 when it purportedly sold the disc to Stecklein. Seitz asserts that the provisions of I.C. § 28–2–403, enabling a person without valid title to transfer valid title to a subsequent purchaser of the property held in entrustment, have not been satisfied.[3]

On appeal, Seitz wants to characterize his transaction with Farmers Exchange as an "entrustment" as that term is defined in I.C. § 28–2–403(3). For purposes of reviewing the summary judgment order entered against Seitz, we will agree that a reasonable inference could be drawn from Seitz's affidavit that the initial arrangement Seitz had with Farmers Exchange was one of entrustment whereby the implement dealer was to find a buyer for the disc.

However, Seitz's complaint did not plead facts indicating he was relying upon the theory of entrustment. To the contrary, all counts of the complaint are based on allegations of the *sale* of the disc by Seitz to Farmers Exchange under written contract

---

**3.** We recognize, as do the parties to this suit, that if Farmers Exchange sold the disc to Stecklein while the disc was subject to an "entrustment," Farmers Exchange, as a "merchant who deals in goods of that kind," had "power to transfer all rights of the entruster [Seitz] to a buyer in ordinary course of business." I.C. § 28–2–403(2). We also recognize that Stecklein was *not* a "buyer in ordinary course of business." " 'Buying' [in the ordinary course of business] ... does not include a transfer ... in total or partial satisfaction of a money debt." I.C. § 28–1–201(9). Thus, if the entrustment provisions were applicable to the transaction the summary judgment, as to Stecklein at least, would have to be set aside.

("Purchase Order"), a copy of which was attached to the complaint. As to Stecklein, count IV alleged that due to the breach of the contract by Farmers Exchange, the Steckleins took the disc subject to a "constructive trust." Count V alleged that "[Seitz] is the true and titled owner of the ... disc" or, alternatively, that he "enjoys a purchase money security interest in said disc...."[4]

The complaint alleged that Seitz agreed to sell the disc to Farmers Exchange "on or about the 15th day of December, 1982." The complaint further alleges that Farmers Exchange sold the disc to Stecklein *after* purchasing it from Seitz. Seitz alleged that $3,000 "plus accrued interest of $205.41" was due him from the defendants because of their refusal to pay the "contract price" or to return the disc. Based on these allegations, Seitz obtained a default judgment against the Boyces for $3,205.41 plus costs and attorney fees. Seitz alleged that when Stecklein purchased the disc he knew, "or in the exercise of reasonable care, should have known that ... Boyce and Farmers Exchange, Inc. continued to owe the plaintiff James Seitz for the purchase price thereof."

"It has been the rule in Idaho that 'issues considered on summary judgment are those raised by the pleadings.'" *Gardner v. Evans*, 110 Idaho 925, 939, 719 P.2d 1185, 1199 (1986) (quoting *Argyle v. Slemaker*, 107 Idaho 668, 669, 691 P.2d 1283, 1284 (Ct.App.1984)); *see also First Security Bank of Idaho, N.A. v. Absco Warehouse, Inc.*, 104 Idaho 853, 855, 664 P.2d 281, 283 (Ct.App.1983). Given this rule and given the pleadings that the magistrate had before her, we can find no error on the part of the magistrate in failing to hold that the transaction between Seitz and Farmers Exchange was an "entrustment" at the time Stecklein purchased the disc. Indeed, we find nothing in the record on appeal which establishes that the theory of entrustment was ever presented or argued to the *magis-*

trate. As far as the record shows, the entrustment theory was first mentioned in the appeal to the district court. An appellant must affirmatively show error on the record in the trial court. *First Security Bank of Idaho, N.A. v. Absco Warehouse, Inc., supra*. Generally, where it is not shown that an issue was raised in the trial court, an appellate court should not consider the issue for the first time on appeal. Seitz will be held to the theory on which he tried the case before the magistrate. *Ace Realty, Inc., v. Anderson*, 106 Idaho 742, 682 P.2d 1289 (Ct.App.1984). We will now turn to Seitz's second theory: that Farmers Exchange only acquired a voidable title and could not convey good title to Stecklein because Stecklein was not a "good faith purchaser for value" within the meaning of I.C. § 28-2-403(1).

Although Seitz alleged in his complaint that by a written agreement he agreed to sell the disc to Farmers Exchange on or about the 15th day of December, 1982, he has also alleged and argued that he retained title to the disc. The magistrate held that when Seitz accepted and signed the purchase order on December 22 which had been mailed to him on December 15, he transferred his "title and interest" in the disc as seller to Farmers Exchange as the purchaser. The magistrate also noted that "[n]o documents provide retention of title [by] Seitz until full payment was made." The record, however, indicates otherwise. At least an inference to the contrary can be drawn from the purchase order signed by Seitz as "seller." Immediately above his signature is the following printed statement.

I (we) [Farmers Exchange] promise to pay the balance due [$3,000] shown above in cash, or to execute a Time Sale Agreement (Retail Installment Contract) for the purchase price of the Equipment, plus additional charges shown thereon, on or before delivery of the Equipment ordered herein. *Despite physical deliv-*

---

**4.** This broad allegation of present ownership of the disc, without more, would not alert the court that plaintiff was relying on an entrust-

ment theory. Arguably, this allegation leaves room for the entrustment theory, but it hardly gives notice that the theory is in the "room."

*ery of the Equipment, title shall remain in the seller [Seitz] until one of the foregoing is accomplished.* [Emphasis added.]

Neither one of the foregoing conditions for passage of title was "accomplished." Therefore, for purposes of summary judgment, we must assume that Seitz did not intend to pass title to Farmers Exchange on December 22. We must also conclude that title did not pass to Farmers Exchange.[5] The next question we must determine is what effect retention of title by Seitz has (a) on Stecklein, who acquired the disc from Farmers Exchange and (b) on Watt, who subsequently purchased the disc from Stecklein.

█ Section 28–2–401 provides that "[a]ny retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest." "The purpose of this rule is to make Article 2 consistent with Article 9, the Article which establishes a comprehensive scheme for the regulation of security interests in personal property and fixtures." R. NORDSTROM, LAW OF SALES § 126 at 380 (1970). This text further recites:

A seller cannot escape the proscriptions of Article 9 by having the buyer agree

that title is to remain in the seller until the purchase price is paid. The Code provides that such a reservation (no matter what words are chosen) is no more than a reservation of a "security interest," the type of interest to which Article 9 applies.

*Id.* at 381.

Here, Seitz took no steps to perfect his security interest by filing a financing statement as required by I.C. § 28–9–302.[6] The consequences of this failure are controlled in this case by I.C. § 28–9–301(1)(c), the pertinent part of which states:

[A]n unperfected security interest is subordinate to the rights of....

(c) In the case of goods, instruments, documents, and chattel paper, a person who is not a secured party and who is a transferee in bulk *or other buyer not in ordinary course of business,* or is a buyer of farm products in ordinary course of business, *to the extent that he gives value and receives delivery of the collateral without knowledge of the security interest and before it is perfected;* .... [Emphasis added.]

In comments on this subsection in J. WHITE & R. SUMMERS, UNIFORM

---

5. The district court, in its appellate decision, agreed with the magistrate that a sale took place. The district court held that title passed from Seitz to Farmers Exchange before the sale to Stecklein, relying on I.C. § 28–2–401(2). However, that section states:

> *Unless otherwise explicitly agreed* title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading.... [Emphasis added.]

6. Seitz has contended only that I.C. § 28–2–403 governs this case. According to our understanding of the Code provision, at this point in our analysis of the transaction we leave § 28–2–403 entirely and go to Chapter 9. However, even if we were to analyze Stecklein's purchase of the disc to determine if he qualifies as a "good faith purchaser for value" from a "person

with voidable title" under § 28–2–403(1), we would reach the same result. "Good faith" is defined in § 28–1–201(19) to mean "honesty in fact in the conduct or transaction concerned." One court has interpreted this to require no actual knowledge or participation in any material infirmity in the transaction. *Dick Hatfield Chev. Inc. v. Bob Watson Motors,* 10 Kan.App.2d 350, 699 P.2d 566, 572 (1985), *aff'd in part and rev'd in part,* 238 Kan. 41, 708 P.2d 494 (1985). Here, there is no evidence that Stecklein acted in bad faith. The Code's definition of a good faith purchaser "does not expressly or impliedly require lack of knowledge of third party claims." *Brumley Estate v. Iowa Beef Processors, Inc.,* 704 F.2d 1351, 1362 (5th Cir.1983), *citing Peerless Equipment Company v. Azle State Bank,* 559 S.W.2d 114, 116 (Tex.Civ.App.1977).

Moreover, Stecklein gave full "value" for the disc because relinquishing his pre-existing claim of approximately $3,000 was roughly equivalent to the value of the disc. "Value" is expressly defined in the code to include satisfaction of a pre-existing claim. I.C. § 28–1–201(44)(b) and (d).

COMMERCIAL CODE § 25-2 at 1033 (2d ed. 1980), it is said:

> This subsection, of course, gives priority to good faith bulk purchasers and other buyers over unperfected secured creditors. *Such buyers must take without knowledge of the security interest and must give value. The subsection excludes buyers in the ordinary course of business* presumably on the assumption that they will always be superior to an unperfected security interest since they are generally superior even to perfected security interests under the terms of 9–307. [Emphasis added.]

Thus, Stecklein would acquire the disc from Farmers Exchange with priority over Seitz's unperfected security interest only if (1) Stecklein was a buyer "in the ordinary course of business," or (2) if not a buyer in the ordinary course of business, then Stecklein has priority only "to the extent that he gives value and receives delivery of the collateral without knowledge of the security interest." We have already noted that Stecklein was not a buyer in the ordinary course of business because the "value" or consideration he gave for the disc was satisfaction of a money debt owed to him by Farmers Exchange. Footnote 2, *supra;* I.C. § 28–1–201(9).

Accordingly, the question of priority now comes down to whether Stecklein took delivery of the disc "without knowledge of the security interest [of Seitz]." We now turn to that question, keeping in mind that we must view the facts in favor of the party resisting summary judgment. Moreover, because a jury has been requested, the non-moving party (Seitz in this instance) is entitled to the benefit of reasonable inferences drawn from the evidentiary facts. *Anderson v. Ethington,* 103 Idaho 658, 651 P.2d 923 (1982).

Stecklein and Watt both appeared at a hearing held before the magistrate to determine the rights of the parties to possession of the disc *pendente lite.* In response to questioning by Seitz's attorney, Stecklein briefly testified about his knowledge of Seitz's ownership or interest in the disc at the time Stecklein purchased the disc from Blake Boyce of Farmers Exchange.

Q. Mr. Stecklein, during the time that you were at Mr. Boyce's office negotiating the purchase of the disk, did Mr. Boyce call Jim Seitz?

A. He went to the phone and called somebody, I don't know whether it was Jim Seitz or who it was, but he did talk to somebody on the phone.

Q. Did Boyce identify the person he was talking to?

A. Well, I can't really say for sure. Mr. Seitz' name was mentioned, but whether he actually talked with Mr. Seitz, I do not know for sure. He agreed anyway in the conversation, whatever they was doing, he agreed to pay this man $500 a month for the disk.

Q. Now, which disk was that?

A. Well, for this offset disk that I had gotten.

Q. You are sure that is the disk he was referring to?

A. Well, it must have been because it is the one I took. Whether this disk belonged to Mr. Seitz or not, I do not know for sure. I have no proof that it did. I'm just going on Blake Boyce's word.

Q. Do you know that it belonged to Blake Boyce?

A. No, I do not know that it actually belonged to Blake Boyce. I have no proof.

. . . .

MR. STECKLEIN: [T]he only thing I might have to add to this is that I was in the office and there was another man, the one that wrote this Bill of Sale out was working for Boyce and he was there too. Anyway, Blake Boyce agreed with whoever he had the conversation with on the phone, to start paying him $500 a month starting December the 15th, as so stipulated on this contract he had with Mr. Seitz.

**370**

MR. BARBER: Have you seen this contract [Seitz-Farmers Exchange Purchase Order] at all?

MR. STECKLEIN: No. I never seen it until we were served with it.

No affidavit or testimony of Boyce is in the record. Seitz's affidavit in the record sheds no light upon the extent of Stecklein's knowledge concerning any security interest retained by Seitz. Therefore, Stecklein's testimony at the hearing, quoted above, is the only evidence in the record on the question.

"Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (section 28–2–401) is limited in effect to a reservation of a "security interest." . . . .

I.C. § 28–1–201(37). The mere fact that Stecklein knew, when he purchased the disc, that Farmers Exchange owed Seitz $3,000 for the disc is not equivalent to knowledge that Seitz had retained a security interest. We believe that the evidence fails to create a reasonable inference that Stecklein knew when he purchased the disc that it was subject to the unperfected security interest of Seitz. Therefore, we hold that the magistrate did not err in dismissing Seitz's complaint against Stecklein.

Our examination of the evidence discloses, similarly, that Watt was a subsequent good faith purchaser of the disc for value from Stecklein without knowledge of any retained security interest by Seitz. It follows that the transfer of ownership from Stecklein to Watt was unimpaired by the unperfected security interest of Seitz.

Accordingly, we affirm the order of the district court upholding the magistrate's judgment. Costs to respondents Stecklein and Watt. No attorney fees awarded.

WALTERS, C.J., concurs.

BURNETT, J., concurs in result.