797 P.2d 130

**Harold R. STUEVE,**
**Petitioner–Appellant**
**on Appeal,**

v.

**NORTHERN LIGHTS, INC., an Idaho**
Corporation, Michael G. Fox, Gordon J.
Hudson, Arthur L. Jasman, Donald
Gillingham, Art Burnett, Jon Adams,
Gerald E. Chittick, and Erval Rainey,
Respondents–Respondents on Appeal,

and

**R.B. Dugal, Respondent.**

**No. 18074.**

Supreme Court of Idaho.

Aug. 24, 1990.

James H. Paulsen, Sandpoint, for petitioner-appellant on appeal.

Elsaesser, Jarzabek & Buchanan, Sandpoint, for respondents-respondents on appeal. John F. Elsaesser, Jr., argued.

McDEVITT, Justice.

Northern Lights, Inc. ("Northern Lights") is a rural electric cooperative and an Idaho nonprofit organization. Harold R. Stueve is a member of the cooperative who served on Northern Lights' Board of Directors from 1981 until 1987. In 1985, the Board adopted a policy to protect the confidentiality of its members' names, ad-

dresses, and telephone numbers. This policy was slightly modified at the 1988 annual meeting which Stueve was unable to attend.

Stueve did not approve of the 1988 changes. He was also concerned that certain improprieties occurred in that year's annual election. Stueve believed that these improprieties were the result of the corporate employees' ability to exercise inordinate control over management through the electoral process. Because of these concerns, on August 29, 1988, Stueve made oral and written demands upon Northern Lights for the following information:

1. Northern Lights' voting register for the 1988 annual meeting;
2. Proof of a quorum at that meeting;
3. A list of the proxy holders for the 1988 annual meeting and the number of proxies held by each;
4. A list of all current Northern Lights members; and
5. The minutes of the 1988 membership meeting.

On September 12, 1988, Northern Lights provided Stueve with a copy of the draft of minutes from the 1988 annual meeting, but it denied the balance of his request, claiming that the vast majority of its members regarded that additional information as being confidential.

On December 2, 1988, in response to the Board's refusal to provide him with all the requested information, Stueve filed a petition for writ of mandate against Northern Lights, Inc., its general manager, Michael G. Fox, and the other members of the Board of Directors. Stueve sought the following relief:

1. Inspection of the voting register for the 1988 meeting, proof of a quorum, a list of proxy holders and the number of proxies held by each at the 1988 annual meeting, and a list of all current Northern Lights members.
2. A penalty payment by each of the defendants of $50.00 per day from August 29, 1988, until the records were provided.
3. Attorney fees.

A hearing on the court's order to show cause was held on January 17, 1989, after which the court ordered that Northern Lights supply the requested information to Stueve. However, the court specifically declined to award attorney fees or the requested penalty. Stueve filed a motion to alter the judgment, requesting that the attorney fees and penalty be imposed. The court denied this motion and Stueve appeals.

The issues on appeal are whether the penalty provisions of I.C. § 30–1–52 apply to nonprofit corporations and whether the trial court erred in refusing to award Stueve reasonable attorney fees.

I.

PENALTY PROVISION OF I.C. § 30–1–52 APPLICATION TO NONPROFIT CORPORATIONS

In this case it is undisputed that Stueve had been a member of Northern Lights for approximately thirty years, and prior to the commencement of this action had made demands upon Northern Lights for access to its records in order to obtain the information sought by Stueve in this action. Northern Lights denied Stueve's request, relying on a "policy" which treated most membership related data as confidential.

The statutes applicable to Northern Lights as a nonprofit corporation that are relevant to this action are as follows:

30–319. **Books and records.**—(a) Each nonprofit corporation shall keep correct and complete books and records of account and shall keep minutes of the proceedings of its members, board of directors, and committees having any authority of the board of directors and shall keep at its registered office or principal office in this state a record of the names and addresses of its members entitled to vote.

(b) All books and records of a corporation may be inspected by any member, or his agent or attorney, for any proper purpose at any reasonable time. In no event shall this right of inspection be

held to apply to a corporation which has no members.

**30–303. Application of Business Corporation Act.**—(a) Each nonprofit corporation shall be governed by the provisions of the Idaho Business Corporation Act except insofar as they may be inconsistent with the provisions of this act.

(b) As applied to nonprofit corporations, the term "shareholders" as it appears in the Business Corporation Act shall be held to include members, and, with regard to quorum and voting requirements, the term "outstanding shares" shall be held to include members.

■ The above quoted statutes are contained in the Idaho Nonprofit Corporation Act, which regulates nonprofit corporations. Section 30–303 of that Act clearly provides that Northern Lights is subject to the provisions of the Idaho Business Corporation Act, which governs the operations of for-profit corporations, except that where the two statutory schemes conflict, the Nonprofit Corporation Act will govern Northern Lights' activities.

The pertinent provisions of the Idaho Business Corporation Act are as follows:

**30–1–52. Books and records.**—Each corporation shall keep correct and complete books and records of account and shall keep minutes of the proceedings of its shareholders and board of directors and shall keep at its registered office or principal place of business or at the office of its transfer agent or registrar, a record of its shareholders, giving the names and addresses of all shareholders and the number and class of the shares held by each. Any books, records and minutes may be in written form or in any other form capable of being converted into written form within a reasonable time.

Any person who shall have been a holder of record of shares or of voting trust certificates therefor at least six (6) months immediately preceding his demand or shall be the holder of record of, or the holder of record of voting trust certificates for, at least five percent (5%) of all the outstanding shares of the corporation, upon written demand stating the purpose thereof, shall have the right to examine, in person, or by agent or attorney, at any reasonable time or times, for any proper purpose its relevant books and records of accounts, minutes and record of shareholders and to make extracts therefrom.

Any officer or agent who, or a corporation which, shall refuse to allow any such shareholder or holder of voting trust certificates, or his agent or attorney, so [sic] to examine and make extracts from its books and records of account, minutes and record of shareholders, for any purpose, shall be liable to such shareholder or holder of voting trust certificates in a penalty of fifty dollars ($50.00) per day for each day that such refusal continues after any such shareholder or holder of voting trust certificates, or his agent or attorney, has made and delivered to the corporation written demand for such examination or extraction, in addition to any other damages or remedy afforded him by law. It shall be a defense to any action for penalties under this section that the person suing therefor has within two (2) years sold or offered for sale any list of shareholders or of holders of voting trust certificates for shares of such corporation or any other corporation or has aided or abetted any person in procuring any list of shareholders or of holders of voting trust certificates for any such purpose, or has improperly used any information secured through any prior examination of the books and records of account, or minutes, or record of shareholders or of holders of voting trust certificates for shares of such corporation or any other corporation, or was not acting in good faith or for a proper purpose in making his demand.

Nothing herein contained shall impair the power of any court of competent jurisdiction, upon proof by a shareholder or holder of voting trust certificates of proper purpose, irrespective of the period of time during which such shareholder or holder of voting trust certificates shall

have been a shareholder of record or a holder of record of voting trust certificates, and irrespective of the number of shares held by him or represented by voting trust certificates held by him, to compel the production for examination by such shareholder or holder of voting trust certificates of the books and records of account, bylaws, minutes and record of shareholders of a corporation.

Upon the written request of any shareholder or holder of voting trust certificates for shares of a corporation, the corporation shall mail to such shareholder or holder of voting trust certificates its most recent financial statements showing in reasonable detail its assets and liabilities and the results of its operations.

The question that must be resolved is whether the penalty provisions contained in the third paragraph of I.C. § 30–1–52 are inconsistent with provisions of the Idaho Nonprofit Corporation Act, particularly I.C. § 30–319, which deals with the keeping of the books and records of a nonprofit corporation.

Each of the pertinent code sections requires the respective corporations to keep and maintain "books and records of account" and to make those documents available to the shareholders or members of the respective entities who seek them for a proper purpose.

The principal difference between the two code sections (I.C. § 30–1–52 and § 30–319) is that one provides a specific penalty for non-compliance by the corporation through its officers and directors, and the other provides no such penalty, nor does it deal with the issue of the enforcement of an appropriate individual's rights to inspect and copy the documents required to be maintained by the entity.

■ This Court has long held that the rules of statutory construction applicable in this instance require us to read the two statutes involved in this case in such a way that we do not make mere "surplusage" of the provisions of the statutes, and that we construe them, insofar as possible, to give meaning to all of their parts in light of the legislative intent expressed therein. *Moss v. Bjornson,* 115 Idaho 165, 765 P.2d 676 (1988); *Westerberg v. Andrus,* 114 Idaho 401, 757 P.2d 664 (1988); *Wright v. Willer,* 111 Idaho 474, 725 P.2d 179 (1986); *Hartley v. Miller–Stephan,* 107 Idaho 688, 692 P.2d 332 (1984); *Bastian v. City of Twin Falls,* 104 Idaho 307, 658 P.2d 978 (Ct. App.), *review denied* (1983).

With the standards of review as announced in the preceding cases in mind, we turn to the statutes in question.

■ Idaho Code § 30–319 does not in any fashion address the issue of the manner in which a member of a nonprofit corporation may enforce the right clearly granted to that member to inspect the books and records required to be maintained by the nonprofit corporation under I.C. § 30–319. Idaho Code § 30–319 being silent on the issue of enforcement of a member's rights, we cannot determine how it can be inconsistent with the enforcement penalty provisions of I.C. § 30–1–52, which were made applicable to nonprofit corporations pursuant to the terms of I.C. § 30–303.

In furthering a scheme of disclosure of corporate information to the shareholders and members of both business corporations and nonprofit corporations, the legislature provided for specific penalties as a disincentive to corporate officers and directors to deny access to those individuals. The right to inspect by a member of a nonprofit corporation is no less than that of a shareholder of a business corporation in the terms of the applicable statutes.

We hold, therefore, that the provisions of I.C. § 30–1–52, through the provisions of I.C. § 30–303, supplement I.C. § 30–319 and are not inconsistent with it.

■ The evidence is clear from the record in this case that all of the respondents, save R.B. Dugal, participated in the decision to deny Stueve the rights accorded him under the provisions of I.C. § 30–319, and therefore, the penalty provision of I.C. § 30–1–52 are applicable to each of them. This is so because the clear language of I.C. § 30–1–52 provides that "any officer or

agent who, or a corporation which," refuses to make available the data properly requested as provided in I.C. § 30–319 or § 30–1–52 "shall be liable to such shareholder ... in a penalty of fifty dollars ($50.00) per day for each day that such refusal continues...." The penalty provisions are clearly applicable to each actor who participated in the refusal to comply. In this case the rejection of Stueve's requests was approved by all of the Board members except R.B. Dugal. Therefore, each of those persons approving the denial of Stueve's requests, are subject to the penalty provisions of I.C. § 30–1–52.

## II.

### DENIAL OF ATTORNEY FEES TO PETITIONER–APPELLANT

■ It is clear, under this Court's prior decisions and the language of I.C. § 12–121, that the award of attorney fees pursuant to the terms of that section is committed to the sound discretion of the trial judge based on the record before the trial court, and that to overturn the determination of the trial court on appeal requires a conclusion by the appellate court that the trial court abused its discretion. *Viehweg v. Thompson,* 103 Idaho 265, 647 P.2d 311 (Ct.App.), *review denied* (1982). In this case, the only possible theory upon which a defense to the request by Stueve could be based, would be proof that the information he sought was not for a "proper purpose."

This record is silent as to any evidence of impropriety of purpose or intent on the part of Stueve. The trial court specifically held otherwise, stating:

There has been not one shred of evidence revealed here that this particular individual, Mr. Stueve, is not acting in good faith consistent with what he says in his letter of August 29, as the reason why he desires the information.

And his testimony here today gives evidence of a further proper purpose, and that is to use the information in an effort to petition the State government for consideration of what in his view are necessary enactments to correct what

are in his view policies, procedures, or methods of doing business of the corporation that he believes are improper.

And I don't think we need to discuss too much about the rights of citizens in this country to petition their government. That's obviously a proper purpose.

And it seems to be that the information that he is seeking is legitimately related to that end, and that it is a proper purpose.

Tr. p. 106: 12–107:4.

The record being silent as to any basis in fact or law for the denial of Stueve's requests by Northern Lights, we must look to the other issues raised in this action to determine whether the award of attorney fees is appropriate. The issue of the applicability of I.C. § 30–1–52 to nonprofit corporations was not previously addressed by this Court. Although this issue was not raised by Northern Lights until after Stueve had filed suit, it was a legal defense reasonably asserted. We cannot hold that the trial court's denial of attorney fees was an abuse of discretion.

We affirm the trial court's issuance of a writ of mandate and denial of attorney fees, and reverse on the issue of application of I.C. § 30–1–52. We remand to the district court for action consistent with this opinion.

Costs on appeal awarded to appellant.

BAKES, C.J., and BISTLINE, JOHNSON and BOYLE, JJ., concur.