834 P.2d 912

**Kelley Bean Co., Inc., Plaintiff,**

v.

**Nolan VICTOR, Herb Montierth, Robert J. Meyers, Defendants–Cross Defendants–Appellants;**

and

**Robert J. GRIFFIN and Defendant– Cross Claimant–Respondent;**

and

**Farmer's Home Administration, Defendant.**

No. 19422.

Court of Appeals of Idaho.

July 10, 1992.

Rettig, Rosenberry, Lovan & Pangburn, Caldwell, for defendants-cross defendants-appellants. Bob E. Pangburn, argued.

Goodman & Duff, Rupert, Robert C. Grisham and Andrea M. Pogue, Boise, for defendant-cross claimant-respondent. Larry R. Duff, argued.

SWANSTROM, Judge.

This is an appeal from a partial summary judgment holding that Farmer's Home Administration (FmHA) had a perfected security interest in a bean crop grown in Canyon County by Robert Griffin. We hold no security interest attached and that FmHA was not entitled to judgment as a matter of law. We reverse and remand.

On January 22, 1990, D & H Farms, Inc., a corporation not involved in this case, entered into an agreement to lease 800 acres in Canyon County from Nolan Victor, Herb Montierth and Robert Meyers (the landlords). Pursuant to an addendum to the lease agreement, Robert Griffin rented 200 acres from the landlords to grow beans. The 200 acres were part of the 800 acres originally leased by D & H Farms. The landlords contend that the lease/addendum gives them an unperfected security interest in Griffin's 1990 bean crop for rental payments which Griffin failed to pay.

Griffin obtained money for farming operations from FmHA. The record contains a security agreement between FmHA and Griffin executed in February, 1989—almost a year before Griffin rented the 200 acres. The district court found that FmHA had a perfected security interest in the bean crop which took priority over any security interest claimed by the landlords.

Once Griffin grew the beans and harvested them, he stored them with Kelley Bean Co. When Griffin attempted to sell part of the Canyon County bean crop, the landlords demanded delivery of the proceeds from Kelley Bean. FmHA also claimed an interest in the bean crop. Kelley Bean, not wanting to be subject to multiple liability, filed an interpleader action bringing all the parties into court to determine who had a superior right to the bean crop or to its proceeds. *See* I.R.C.P. 22; I.C. § 5–321. After tendering the proceeds into court, Kelley Bean was dismissed from the action.

FmHA filed a motion for summary judgment, asking the court to rule that it had a valid perfected security interest in Griffin's bean crop. Griffin took the position that FmHA had a security interest and that the landlords did not. Griffin also moved for partial summary judgment asking the court to rule that his rental agreement did not give the landlords a security interest in his crop.

For purposes of summary judgment only, the district court "assumed" that the landlords had an unperfected security interest in Griffin's crop; however, the court also ruled that FmHA had a security interest which was perfected and which was entitled to priority. The partial summary judgment was certified as final and the landlords appeal. The respondent, Griffin, argues for affirmance of the summary judgment awarded to FmHA.[1]

The principal issue presented to us is whether the district court erred in determining that FmHA had a perfected security interest in Griffin's bean crop. We are

---

1. Griffin filed a cross-claim in this action for damages against the landlords, alleging intentional and negligent misrepresentation as to the source and adequacy of irrigation water. The landlords have answered the cross-claim and those proceedings are pending below.

also asked to decide whether the landlords have a security interest in the bean crop.

Our standard of review in an appeal from summary judgment is the same used by the lower court: "[W]e review the record and construe all facts in favor of the non-moving party to determine if there are material facts at issue that would preclude the grant of summary judgment." *McDonald v. Paine,* 119 Idaho 725, 727, 810 P.2d 259, 261 (1991). We exercise free review as to whether or not a material question of fact exists. *Kugler v. Drown,* 119 Idaho 687, 809 P.2d 1166 (Ct.App.1991). We will not go beyond determining the two issues of whether there exists a genuine issue as to a material fact and whether the moving party is entitled to judgment as a matter of law. *Mitchell v. Siqueiros,* 99 Idaho 396, 582 P.2d 1074 (1978).

### The Security Interest of FmHA

■ The landlords contend that FmHA never had a valid security interest in the bean crop. Griffin responds that the landlords never raised this issue below, and therefore we should not address it on appeal. The landlords assert otherwise. We are satisfied from the court minutes of the summary judgment hearing that the issue was raised and decided below. Without analyzing how FmHA had satisfied the specific elements for the creation of a valid security interest pursuant to I.C. § 28–9–203, the court found that FmHA had a security interest based on a February, 1989, security agreement and financing statements filed by FmHA. The landlords concede that they filed no affidavits in opposition but, as they point out, an adverse party does not have an obligation to file affidavits countering those filed by the party moving for summary judgment where the movant's affidavit shows, as a matter of law, that the movant's claim must fail. *See* I.R.C.P. 56(c); *McCoy v. Lyons,* 120 Idaho 765, 771, 820 P.2d 360, 366 (1991).

■ The requirements for the creation or "attachment" of a valid security interest are set forth in I.C. § 28–9–203. That section provides in part:

(1) [A] security interest is not enforceable against the debtor or third parties (with respect to the collateral and does not attach) unless:

(a) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and in addition, *when the security interest covers crops growing or to be grown* or timber to be cut, *a description of the land concerned;* and

(b) value has been given; and

(c) the debtor has rights in the collateral.

(2) A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in subsection (1) have taken place unless explicit agreement postpones the time of attaching.

I.C. § 28–9–203 (emphasis added).

The first requirement for the attachment of a valid security interest is that the collateral be in the possession of the secured party or that the debtor sign an agreement where the collateral is described, including a description of the land where the security interest covers crops to be grown. It is undisputed that FmHA does not possess the collateral, therefore a writing must exist comporting with I.C. § 28–9–203(1)(a). Official comment 2 of I.C. § 28–9–203 reiterates the specific requirement of I.C. § 28–9–203(1)(a) that in the case of crops growing or to be grown, the written security agreement must contain a description of the land. In determining the adequacy of the description, official comment 2 also references I.C. § 28–9–110, which provides that the description "is sufficient whether or not it is specific if it reasonably identifies what is described." I.C. § 28–9–110. The official comment to I.C. § 28–9–110 provides that "[t]he test of sufficiency of a description laid down by this section is that the description do the job assigned to it— that it make possible the identification of the thing described." *See also Idaho Bank & Trust Co. v. Cargill, Inc.,* 105

Idaho 83, 87, 665 P.2d 1093, 1097 (Ct.App. 1983).

We now address the sufficiency of the security agreement between FmHA and Griffin contained in the record which the court cited in concluding that FmHA had a security interest. This agreement did not specifically describe the land where Griffin grew the bean crop. The agreement states that Griffin grants FmHA a security interest in crops growing or to be grown on three described parcels of land. Two of the described parcels are within Malheur County, Oregon, and the other parcel is within Minidoka County, Idaho. The security agreement does not list or describe any land in Canyon County, Idaho. Moreover, this agreement was signed almost a year before Griffin leased the 200 acres in Canyon County from the landlords and commenced to farm it. We note that the record contains no supplement to the February, 1989, security agreement between FmHA and Griffin describing land in Canyon County. As a matter of law, the security agreement on which FmHA relies does not create a security interest in Griffin's Canyon County bean crop.

■ Griffin also argues that the UCC–1F financing statement, and the UCC–3F amendment thereto filed June 18, 1990, satisfy the requirement of a signed written security agreement. Griffin cites no authority for the principle that a financing statement can satisfy the requirement of a written security agreement. Neither the UCC–1F financing statement nor the UCC–3F amendment is a form which "creates or provides for a security interest," and, therefore, neither meets the definition of a "security agreement." I.C. § 28–9–105(1).

The landlords have cited cases for the proposition that a financing statement cannot create a security interest. *See C & H*

*Farm Service Company of Iowa v. Farmers Savings Bank*, 449 N.W.2d 866, 869, 10 U.C.C.Rep.Serv.2d 528, 534 (Iowa 1989) (no security interest attached where security agreement did not describe land upon which crops were growing or to be grown and the financing statement did not contain language granting a security interest); *General Electric Credit Corp. v. Bankers Commercial Corp.*, 244 Ark. 984, 429 S.W.2d 60 (1968); *In re Broward Auto Brokers, Inc.*, 11 U.C.C.Rep.Serv. 402 (Bankr.S.D.Fla.1972); *In re Coody*, 59 B.R. 164, 1 U.C.C.Rep.Serv.2d 581 (Bankr. M.D.Ga.1986). The landlords have also cited authority indicating that a financing statement may not broaden an otherwise insufficient property description. *See In re JCM Cooperative, Inc.*, 8 U.C.C.Rep.Serv. 247, 249 (Bankr.W.D.Mich.1970). We conclude that the financing statements, construed together, do not create a security interest in FmHA's favor in Griffin's bean crop as a matter of law.[2]

Griffin also contends that his affidavit and that of an FmHA employee stating that a security agreement existed is uncontroverted and therefore decisive. We disagree. These statements add nothing to the record but conclusions. Moreover, Griffin cites no authority supporting his contention that where parties subsequently agree that a security agreement existed, such fact must be found even though there is incomplete compliance with a statutory requirement for the attachment of a security interest. Official comment 3 to I.C. § 28–9–203 states that one purpose of subsection (1)(a) is evidentiary, minimizing the possibility of future dispute. The authors of the UCC preferred that the parties place their agreement in writing, unless the collateral was held in the possession of the secured party. It is clear that the record presented to us, including the February,

---

2. The extent of the land description on the UCC–3F is a county code designation of "14," which by reference to a list indicates Canyon County. For the purposes of a "security agreement," it is possible that a county designation alone may not be specific enough to satisfy the requirement of I.C. § 28–9–203(1)(a); however, we do not decide that issue today. *See* I.C. § 28–9–110, providing that a description of land "be a

legal description, that is, a description setting forth a United States government subdivision, the lot and block of a private subdivision, or metes and bounds of the premises affected by the security interest and tied to primary control points which include either a section corner, quarter-section corner. or meander corner according to United States government survey."

1989, security agreement and the June 18, 1990, UCC–3F financing statement, does not establish the prerequisite to a valid security interest. Because a security agreement containing a "description of the land" does not exist to establish the attachment of a security interest, as required by I.C. § 28–9–203(1)(a), we need not address whether the requirements of I.C. § 28–9–203(1)(b) and (c) have been met. Based upon the record before us, we hold that FmHA was not entitled to judgment as a matter of law.

### The Landlords' Claim to a Security Interest

■ As noted before, solely for purposes of FmHA's summary judgment motion, the district court assumed that the landlords also had a security interest in the bean crop, but the court held that it was inferior to the security interest of FmHA because it was unperfected.

The landlords rely upon the language in a "Lease Agreement" dated January 22, 1990, and in an "Addendum To Lease Agreement." Griffin did not sign the lease, but he and the landlords and others did sign the addendum. The addendum recited that it "is hereby attached and made a part of that certain LEASE AGREEMENT, entered into on January 22, 1990, . . ." It also recited that "Brent Griffin and Robert Griffin agree to all covenants contained in this agreement which apply to the LESSEE." Although Griffin argues to the contrary, we hold that the addendum is clearly incorporated into the lease and that Griffin is bound by all of the terms of the lease applicable to the 200 acres he agreed to farm in 1990.

To support their claim of a security agreement in beans grown on the 200 acres in Canyon County, the landlords rely on the following language in the lease agreement:

A. To secure the payment of rent as herein provided for, LESSEE shall annually grant LESSOR security interest covering all crops, livestock, and supplies used or produced in farming operations conducted on the leased premises, and

B. The products of crops or livestock in unmanufactured states [sic]. LESSEE shall, as LESSOR may request and require, procure and deliver to LESSOR, as the secured party, or execute any Security Agreement, financing statement or other writing necessary to grant, reserve, protect or enforce LESSOR'S rights and interests to or in such collateral, or in any other collateral agreed to by the parties. The crop interest of the LESSOR shall be given to the purchasers of all crops raised on the said 800 acres, and funds secured for the LESSOR.

We cannot agree with the arguments of the landlords that the above language operates to create a security interest in Griffin's crop. The language contemplates that *"as LESSOR may require"* the LESSEE will "execute any Security Agreement, financing statement or other writing necessary to *grant,* reserve, protect or enforce LESSOR'S rights and interests to or in such collateral, or in any other collateral agreed to by the parties." (Emphasis added.) While some of the language in paragraph B is questionable, we hold that the critical language referring to the granting of a security interest is clear. The lease requires Griffin to give a security interest if and when requested by the landlords. Because it is undisputed that they never requested him to sign a security agreement or any financing statement, no security interest was created in Griffin's 1990 bean crop.

In summary, we conclude from the record presented to us that neither the FmHA nor the landlords had a valid security interest in Griffin's 1990 bean crop. Accordingly, based on this same record, Griffin was free to receive the proceeds from the sale of his beans or to direct where such proceeds should be paid by the Kelly Bean Company. Accordingly, we reverse the partial summary judgment and remand this case for trial on the remaining issues

between the cross-claimant and cross-defendants.

We hold that Griffin is the prevailing party on this appeal and we award him costs. I.A.R. 40. No attorney fees awarded.

WALTERS, C.J., and SILAK, J., concur.