864 P.2d 194

**Arley D. LAWRENCE, Plaintiff–Appellant–Cross–Respondent,**

v.

**Forrest JONES, Defendant–Respondent–Cross–Appellant.**

No. 20621.

Court of Appeals of Idaho.

Nov. 17, 1993.

Elsaesser, Jarzabek, Buchanan & Dressel; Richard D. Dressel, Sandpoint, for appellant.

Fred R. Palmer, Sandpoint, for respondent.

PERRY, Judge.

Appellant Arley Lawrence (Lawrence) and respondent Forrest Jones (Jones) entered into an agreement for the purchase of land that Jones owned in Bonner County. Before closing, Jones notified Lawrence of his intent not to proceed with the sale, and Lawrence filed this action for specific performance and damages. The district court granted Jones' motion for summary judgment, finding the contract between the parties unenforceable because of various ambiguities. For the reasons stated below, we affirm the judgment.

### FACTS AND PROCEDURE

In the spring of 1992, Jones and Lawrence began discussing the sale of two parcels of land that Jones owned in Bonner County. The land included one parcel of approximately 173 acres south of Cocolalla Lake and another parcel of approximately 95 acres near Hoodoo Creek. Neither party consulted an attorney concerning the drafting of a purchase agreement. In April of that year, Lawrence purchased a pre-printed form entitled "Real Estate Purchase and Sale Agreement (with Earnest Money Provision)" for their use in consummating the transaction.

Initially, Lawrence drafted an agreement, which was never signed, stating a total purchase price of $300,000. Later, using the pre-printed form, Lawrence prepared a second agreement dated April 5, 1992, increasing the purchase price to $400,000. At some point, Lawrence prepared a document entitled "Addendum to Purchase Agreement." This document provided that proceeds from logging the land would be applied to the purchase price and further contained what purported to be a security provision for the loan. This addendum refers to an "Agreement of Sale ... dated April 3, 1992." On April 6, 1992, the parties signed both the April 5 agreement and the addendum referring to an April 3 Agreement of Sale. In the space provided for a legal description of the prop-

erty, Lawrence typed "See Attached." Four maps were then attached to the agreement. These maps had been faxed from a Sandpoint title company and indicated roughly where the two properties were located. Each of the maps was stamped with the statement: "This sketch is furnished without charge solely for the purpose of assisting in locating said premises and the company assumes no liability for inaccuracies therein." The maps showed certain parcels heavily outlined and the abbreviation "P.I.Q." with an arrow pointing to each outlined area. Two of the maps also bore indications; one reading "T55NR2W, SEC19," and the other "SEC 34,T55N,R4W."

The parties also signed a receipt for the payment of $1,000 in earnest money for the sale. The receipt indicated that the remaining down payment of $24,000 was due by May 15, 1992. The remainder of the purchase price was to be paid in yearly installments of $36,000.

On April 29, 1992, Jones informed Lawrence that he did not consider the agreement enforceable and attempted to repay the earnest money. Consequently, Lawrence filed suit against Jones for specific performance. Lawrence also requested consequential damages resulting from the breach of contract, attorney fees and costs.

Jones moved for summary judgment in the district court, arguing, among other things, that because of various ambiguities, the agreement could not be enforced. Lawrence filed a cross-motion for a declaratory judgment alleging that the contract was valid and enforceable. The district court granted Jones' motion for summary judgment, concluding that: (1) the agreement failed to properly address the matter of prepayment, which the parties had orally agreed to; (2) the agreement failed to properly provide for security for the transaction, which the parties had also discussed; and (3) the description, as contained in the maps, was insufficient to make the contract enforceable. We agree with the district court that the security provision was unenforceable. Because the security provision was an essential term of the agreement,

the entire contract is therefore unenforceable. We do not consider the other issues raised, as the failure of the security provision is sufficient in itself to affirm the lower court's decision.

## I.

■ We first note that summary judgment should be granted at the trial level when the pleadings, depositions and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c); *Doe v. Durtschi*, 110 Idaho 466, 469, 716 P.2d 1238, 1241 (1986). The facts are to be liberally construed in favor of the party opposing the motion, and that party is given the benefit of all favorable inferences that might reasonably be drawn from the evidence. *Id.* If the record contains conflicting inferences or if reasonable minds might reach different conclusions with respect thereto, the motion must be denied.

■ When reviewing a motion for summary judgment, our standard of review is the same as that used by the lower court. "[W]e review the record and construe all facts in favor of the non-moving party to determine if there are material facts at issue that would preclude the grant of summary judgment." *McDonald v. Paine*, 119 Idaho 725, 727, 810 P.2d 259, 261 (1991). We will not go beyond determining the two issues of whether there exists a genuine issue as to a material fact and whether the moving party is entitled to judgment as a matter of law. *Mitchell v. Siqueiros*, 99 Idaho 396, 398, 582 P.2d 1074, 1076 (1978); *Victor v. Griffin*, 122 Idaho 395, 397, 834 P.2d 912, 914 (Ct.App.1992).

■ The issue confronting the trial court was whether the agreement between Lawrence and Jones was an enforceable contract. At the outset we note that a contract for the sale of real property is not enforceable unless it is in writing. I.C. §§ 9–503, –505. A contract must be complete, definite and certain in all its material terms, or contain provisions which are ca-

pable in themselves of being reduced to certainty. *Giacobbi Square v. PEK Corp.*, 105 Idaho 346, 348, 670 P.2d 51, 53 (1983). For land sale contracts, the minimum requirements are typically the parties involved, the subject matter thereof, the price or consideration, a description of the property and all the essential terms of the agreement. *Hoffman v. SV Co., Inc.*, 102 Idaho 187, 190, 628 P.2d 218, 221 (1981).

The district court found the Lawrence–Jones agreement lacking in three respects. First, it found that the agreement lacked any provision for prepayment, despite the fact that the parties had come to an oral agreement that no prepayment penalties would be charged. Second, the district court found that the agreement inadequately dealt with the issue of security, even though the parties agreed orally that the land would be held as the security. Finally, the district found the agreement to be ambiguous as to whether one parcel or two were being sold. As part of this last finding, the trial court also determined that because the descriptions as contained in the maps required parol evidence for interpretation as to what state and county was being depicted, and because such evidence is not permitted, the descriptions were inadequate to support the enforceability of the contract.

The district court found that the agreement did not reflect the parties' agreement as to the security provision or was at best ambiguous. Contained in the addendum to the contract were the following provisions:

1) Until this contract has been paid in full, logging restrictions shall be conducted in a manner consistent with good forestry practices and in compliance with any and all applicable governmental regulations and title restrictions. All proceeds from any logging operations shall be paid directly to the seller and applied to the balance then owing.

2) Upon receipt of a total principal reduction of $75,000, seller shall convey clear title free of encombranes [sic] on the 97+ acre parcel to the purchaser. The remaining balance shall at that time be secured by the 172+ acre parcel.

Although provision two attempts to set up a security arrangement, it is so vague as to render the contract unenforceable. It does not make clear whether Jones is to retain title to the property, with a deed being placed in escrow and conveyed at the time the amounts in question are paid, or if some mortgage arrangement is contemplated. Although a real estate contract need not contain a security provision if none is contemplated, once parties attempt to provide for security it becomes an essential term of the contract. "Essential," according to Black's Law Dictionary, means "[i]ndispensably necessary; important in the highest degree, requisite. That which is required for the continued existence of a thing." BLACK'S LAW DICTIONARY 546 (6th ed. 1990). In this case, the method of securing payment was central to the contract.

Because the contract in this case was subject to the statute of frauds, I.C. §§ 9–503, –505, gaps in essential terms cannot be filled by parol evidence. "When a written note or memorandum is sought to be introduced as evidence of an oral agreement falling within the statute of frauds, it must be specific and parol (oral) evidence is not admissible to establish essential provisions of the contract." *Remlinger v. Dravo Corporation*, 94 Idaho 292, 293, 486 P.2d 1005, 1006 (1971); *Blumauer–Frank Drug Co., v. Young*, 30 Idaho 501, 167 P. 21 (1917).

To enforce a contract, it must be definite and certain in its terms and requirements so the court can determine what acts are to be performed. *Dale's Serv. Co., Inc. v. Jones*, 96 Idaho 662, 664, 534 P.2d 1102, 1104 (1975). If this contract were allowed to stand, a court would be unable to determine what this term entails from the agreement. As Professor Corbin notes in his treatise on contracts:

A court cannot enforce a contract unless it can determine what it is. It is not enough that the parties think that they have made a contract. They must have expressed their intentions in a manner

that is capable of being understood. It is not even enough that they have actually agreed, if their expressions, when interpreted in the light of accompanying factors and circumstances, are not such that the court can determine what the terms of that agreement are.

Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract.

1 Arthur L. Corbin, Corbin on Contracts § 4.1 (rev. ed. 1993).

Because of the indefinite security provision, this contract was unenforceable. Therefore, the district court did not err when it granted the motion for summary judgment in favor of Jones.

## II.

■■■ On cross-appeal, Jones challenges the district court's ruling denying him attorney fees. Although Jones now claims that he had a right to attorney fees under I.C. 12–120(3), this claim was not raised in the court below. Instead, in his Motion for Summary Judgment, Fees and Costs, he asked for attorney fees based on I.C. § 12–121. The district court simply denied attorney fees without explanation in its order. The decision whether to award attorney fees under I.C. § 12–121 is committed to the sound discretion of the district court, and to overturn such a decision requires a conclusion by the appellate court that the district court abused its discretion. *Stueve v. Northern Lights, Inc.*, 118 Idaho 422, 426, 797 P.2d 130, 134 (1990). We conclude that because of the nature of the issues involved, the district court did not abuse its discretion by denying fees under § 12–121.

■■■ Jones argues that attorney fees should have been awarded by the district court under I.C. § 12–120(3). However, the theory that because this was an action on a contract and therefore attorney fees would be proper under § 12–120(3) was not raised before the district court. "Generally, where it is not shown that an issue was raised in the trial court, an appellate court should not consider the issue for the first time on appeal." *Seitz v. Stecklein*, 111 Idaho 364, 367, 723 P.2d 908, 911 (Ct.App. 1986). Although the issue of attorney fees was raised, it was done so only under § 12–121. The requisite showing under the two statutes is completely different. The district court had no opportunity to consider whether this action constituted a "commercial transaction" under I.C. § 12–120(3) and we will not overturn the discretionary decision of the lower court based on grounds that were not raised below. Therefore, we hold the district court did not abuse its discretion when it denied attorney fees.

■■■ Jones also seeks attorney fees on appeal. Idaho Code § 12–120(3) may be asserted on appeal even though it was not raised at the district court level. It is well-settled in Idaho that one who successfully defends against the enforcement of a contract, when the gravamen of the transaction is a commercial transaction, nevertheless may be entitled to attorney fees even though the court has ruled that no contract exists or it is unenforceable. *Hilt v. Draper*, 122 Idaho 612, 622, 836 P.2d 558, 568 (Ct.App.1992); *Konic Int'l Corp. v. Spokane Computer Serv., Inc.*, 109 Idaho 527, 530, 708 P.2d 932, 935 (Ct.App.1985). This appeal was based on a contract action and under § 12–120(3) we award attorney fees to Jones.

## CONCLUSION

We conclude that, given all the evidence and pleadings presented to the district court, Jones was entitled to judgment as a matter of law. The provision in the contract for security of the loan, which was an essential term, was so indefinite as to render the contract unenforceable. We also conclude that the district court properly exercised its discretion when it did not allow attorney fees under I.C. § 12–121. Costs and attorney fees on appeal are awarded to respondent Jones pursuant to I.C. § 12–120(3) and I.A.R. 41.

WALTERS, C.J., and LANSING, J., concur.