715 P.2d 360

**Rulon B. HANCOCK and Ludwicka Hancock, husband and wife, and Franklin D. Anderson and Dorothy F. Anderson, husband and wife, Plaintiffs-Respondents,**

v.

**Van K. DUSENBERRY and Jolene Dusenberry, husband and wife, and Jeffry R. Burton and Linda G. Burton, husband and wife, Defendants-Appellants.**

No. 14870.

Court of Appeals of Idaho.

Feb. 13, 1986.

Petition for Review Denied
April 17, 1986.

---

Gordon S. Thatcher of Rigby, Thatcher, Andrus & Barton, Rexburg, for defendants-appellants.

Brian R. Goates, Blackfoot, for plaintiffs-respondents.

## ON DENIAL OF PETITION FOR RE-HEARING THIS OPINION SUPERCEDES PRIOR OPINION ISSUED NOVEMBER 6, 1985, WHICH IS WITHDRAWN.

SWANSTROM Judge.

This is an appeal from a decree granting respondents specific performance of a right of first refusal to purchase a thirty-acre tract of land. Appellants, who purchased the tract from its owners, seek a reversal of that decree. They contend, first, that respondents' complaint should be dismissed for failure to join an indispensable party; second, that because respondents failed to exercise their preemptive right within the specified time, the sale to appellants should be confirmed; and, third, that specific performance was inappropriate under the facts of this case. For the reasons set out below, we affirm the decree granting specific performance.

On February 1, 1972, Marion and Rose Tibbitts contracted to sell to respondents, Rulon and Ludwicka Hancock and Franklin and Dorothy Anderson, forty-five acres of wooded recreational property located in Lemhi County, Idaho. The property was part of a tract of approximately ninety-five acres known as "Homestead Entry Survey No. 625." The contract contained a provision granting respondents a right of first refusal in the event that any portion of the retained fifty acres was offered for sale.

10. OPTION TO BUY: In the event the sellers or their heirs in the future, desire to sell that portion of Homestead Entry No. 625 being reserved to them, sellers or their heirs shall notify buyers of sellers' intent, and give the buyers the first opportunity to buy such premises. In the event sellers secure a bona fide offer from a third party to purchase said premises, sellers shall communicate such offer to the buyers hereunder, and shall give the buyers hereunder thirty (30) days within which to determine whether to buy the reserved tract on the same terms as the bona fide offer received by sellers. In the event buyers elect within such 30-day period to purchase said reserved premises on the same basis as the terms contained in the bona fide offer, then sellers must sell said premises to the buyers on such terms. In the event buyers hereunder fail to exercise such option within such 30-day period, then sellers or their heirs may sell the same to such bona fide offeror and this option shall terminate.

On April 22, 1977, the appellants, Van and Jolene Dusenberry and Jerry and Linda Burton, entered into an agreement to purchase thirty acres of the reserved tract from Tibbitts. The agreement, entitled "Earnest Money Receipt and Offer to Purchase," specified a total purchase price of $48,000 and contained the following terms:

At closing, Buyer to deed to Seller Lots 12 & 13*, Cherrywood Subdivision, North Ogden City, Weber County, Utah, as a credit of $24,000 against said purchase price and $24,000 cash. [Footnote, denoted by asterisk, omitted.]

Appellants were aware of respondents' right of first refusal and entered into the April 22 purchase agreement subject to that right.

On May 4, 1977, Tibbitts mailed Rulon Hancock a letter stating that they had received an offer on thirty acres of the reserved tract. The letter contained the following information regarding the terms of the offer:

This is to advise you we have received an offer from a local contractor for 30 acres of the reserved tract of H.E. Survey No. 625. In compliance with paragraph 10 of contract for deed (option to buy) you are herewith given first opportunity to buy said 30 acres upon the following conditions.

At closing buyer to deed to seller all of Lot 12 and all of Lot 13* of Cherry-

wood Subdivision, North Ogden City, Weber Co., Utah and cash payment of $24,000.

On or about May 11, 1977, Rulon Hancock telephoned Marion Tibbitts and discussed the May 4 letter. At trial, Hancock testified that Tibbitts refused at that time to identify the prospective buyer. He further testified that while Tibbitts indicated the two lots were worth approximately $24,000, Tibbitts specifically stated that he wanted the lots and that he would not accept their cash equivalent.

On May 27, 1977, respondents' attorney sent Tibbitts a letter asserting that the offer described in the May 4 correspondence was not a bona fide offer for the purpose of triggering respondents' right of first refusal, and threatening legal proceedings should the sale be consummated. On June 2, 1977, Marion Tibbitts telephoned Franklin Anderson and informed him that respondents could meet the offer by paying $49,000 in cash. Anderson testified that he asked for more time to raise the money and that Tibbitts indicated that he could have it.

On June 4, Tibbitts again telephoned Anderson, this time to inquire if respondents had raised the purchase money. Anderson testified that he again asked for more time but that Tibbitts refused to allow it. Six days later, on June 10, 1977, Tibbitts deeded appellants thirty acres of the reserved tract pursuant to the terms of the April 22 purchase agreement. Thereafter, on July 20, 1977, respondents initiated this action against the Tibbitts and appellants seeking specific performance of the preemptive right to purchase the thirty acres sold to appellants.

Following a court trial, the district court found that Tibbitts had acted in bad faith and in disregard of respondents' preemptive rights in conveying the disputed property to appellants. The court concluded that appellants held the property as constructive trustees for the benefit of respondents, due to respondents' right of first refusal. The court granted specific performance to respondents on the condition that they deposit $48,000 with the Clerk of the Court within thirty days. That condition was subsequently complied with.

Appellants have asserted that this action should have been dismissed because of the respondents' failure to join indispensible parties. This issue arises from the fact that in April, 1972, the respondents had assigned a one-third interest in the Tibbitts contract (and in the forty-five acres being purchased thereunder) to George and Helen Hales. The Hales and respondents currently hold the forty-five acres as tenants-in-common. We agree that the Hales have an interest commensurate with that of respondents in this lawsuit. However, we do not agree that failure to join this interest mandates a dismissal.

■ The record indicates that appellants initially raised this issue at a pre-trial motion hearing. At that time, the parties agreed that rather than joining the Hales, which would necessitate postponing the trial date, the problem of the Hales' interest in the lawsuit would be dealt with by stipulation. Respondents' attorney stated in open court that the Hales would stipulate to be bound by the outcome of the lawsuit and the parties all agreed that such a stipulation would be sufficient. A stipulation to that effect was executed and was filed with the court on September 15, 1982 before the court made its formal findings of fact, conclusions of law and judgment. Thus, appellants' contention that this lawsuit must be dismissed for failure to join the Hales is without merit. The Hales have agreed to be bound by the court's decision and would necessarily be estopped from asserting any inconsistent claim at a future date.

Appellants next assert that respondents, without excuse, failed to exercise the option to purchase within the time period allowed and that the sale to appellants must therefore be confirmed. Contrary to this assertion, the district court specifically found that Tibbitts' failure to properly communicate the terms of appellants' offer to the respondents denied respondents the opportunity to exercise the preemptive rights:

On May 4, 1977, Defendants, Tibbitts, acting in bad faith, lack of fair dealing, and in derogation of Plaintiffs' preemptive right of first refusal, incompletely communicated through letter the terms and conditions of said Earnest Money Receipt and Offer to Purchase to Plaintiffs, Hancock.    .

. . . .

Once again acting in bad faith, lack of fair dealing, and in derogation of Plaintiffs' preemptive right of first refusal Defendants, Tibbitts, refused to disclose the requested information to Plaintiff, Hancocks, and would not disclose the purchase price, cash equivalent, description of the property being offered for sale, the terms of the purchase or the description of Utah lots to be conveyed and applied as credit towards the purchase price; and did, contrary to the true intent of the Tibbitts, falsely state the preemptive right to first refusal could only be exercised by exchanging, as a credit towards the purchase price the Utah lots.

. . . .

Defendants Tibbitts acting in bad faith, lack of fair dealing, and in disregard for Plaintiffs' preemptive right of first refusal, breached the Contract for Deed dated February 1, 1972, by conveying Parcel C hereinabove described to Defendants Burtons and Dusenberrys without first giving plaintiffs the opportunity to exercise their "Option to Buy" or preemptive right of first refusal.

Appellants argue that the evidence is insufficient to support the district court's finding that respondents' failure to exercise the right of first refusal was excused by the lack of proper notice. Whether the notice given in this case was legally adequate, and whether any inadequacy would excuse the untimely exercise of the preemptive right, are questions of law. As to those questions we exercise free review.

■■■ Our Supreme Court has recently held that the holder of a right of first refusal "cannot be called upon to exercise or lose that right unless the *entire* offer is communicated to him in such a form as to enable him to evaluate it and make a decision." *Gyurkey v. Babler*, 103 Idaho 663, 666, 651 P.2d 928, 931 (1982) (emphasis original). The record in the present case manifestly indicates that respondents were not informed of the entire offer between appellants and Tibbitts. The May 4 letter did not identify either the purchasers or the specific property that was subject to the purchase agreement. More importantly, it did not specify the total purchase price and it omitted the language indicating that the two Utah lots were given a cash equivalency value of $24,000. Further, when respondents attempted to inquire as to the identity of the Utah contractor and the specific purchase terms, they were refused that information. These facts constitute substantial evidence to support the district court's findings that Tibbitts failed to give adequate notice of the offer.

■■■ Appellants argue that the Tibbitts were justified in withholding information from respondents pertaining to the proposed sale to appellants. They contended that respondents, in bad faith, had contacted prior potential purchasers of the property and discouraged the purchases by emphasizing the limited access to the property. Appellants state they were only trying to prevent a reoccurrence of this conduct. They ask us to create an exception to *Gyurkey*'s strict notice requirement where the evidence demonstrates that the holders of a right of first refusal have acted in bad faith. However, the evidence does not support appellants' assertion that respondents breached any good faith duty to appellants or to Tibbitts. The district court specifically found that respondents' conduct could not be characterized as unreasonable or inequitable and that respondents had no affirmative duty to do any "equity" towards appellants. All the record indicates in this regard is that respondents had informed other prospective purchasers that there was limited access to the reserved tract. The accuracy of that statement is borne out by the fact that the only access to the reserved tract was by a limited ease-

ment across respondents' property. Thus, we affirm the district court's ruling that respondents' failure to exercise the preemptive right was excused by Tibbitts' failure to fully and accurately communicate to respondents the offer Tibbitts had received from appellants.

■ Finally, appellants contend that specific performance was inappropriate under the facts of this case. We disagree. Specific performance is a common remedy for an optionee whose right of first refusal has been circumvented by a sale to another without notice. Note, *Protecting the Preemptor: Real Property Rights of First Refusal in Gyurkey v. Babler,* 19 IDAHO L.REV. 277 (1983). *See, e.g., Meyer v. Warner,* 104 Ariz. 44, 448 P.2d 394 (1968); *Atchison v. City of Englewood,* 193 Colo. 367, 568 P.2d 13 (1977); Annot., 17 A.L. R.3d 976 (1968). *Gyurkey v. Babler, supra,* is consistent with application of the remedy of specific performance in the case before us. *Gyurkey* simply held that specific performance was inappropriate where the owner of property subject to a right of first refusal has sought to sell that property as part of a larger tract. The Supreme Court reasoned that to allow specific performance in such case would compel the owner to "sell the particular property when he has never received an offer, or intended to sell the property on the terms and conditions asserted by the preemptor." *Gyurkey v. Babler,* 103 Idaho at 668, 651 P.2d at 933.

■ Specific performance is an extraordinary remedy developed by courts of equity to provide relief when the legal remedies are inadequate. J. CALAMARI & J. PERILLO, CONTRACTS § 16–1 (2d ed. 1977). In contracts for the sale or lease of land, courts presume that the aggrieved party does not have an adequate remedy at law and is entitled to specific performance. *Suchan v. Rutherford,* 90 Idaho 288, 410 P.2d 434 (1966). This presumption rests on the premise that a specific tract of land is unique and impossible of duplication. *Id.* That presumption is rebuttable. *Wood v. Simonson,* 108 Idaho 699, 701 P.2d 319

(Ct.App.1985). The presumption was apparently well-founded in this case. As the district court stated, "The Homestead Entry is literally unique land. A beautiful primitive setting; a high mountain-meadow surrounded by timbered mountains with two creeks entering and joining.... Elk, deer and other wildlife abound."

■ In their petition and brief for rehearing appellants again assert that the district court gave respondents an "option for specific performance" binding on Tibbitts but leaving respondents the choice of whether to exercise the option. Appellants argue that such an "option" is contrary to Idaho law and cite *Thompson v. Burns,* 15 Idaho 572, 99 P. 111 (1908). Unlike the present case, *Thompson* involved a purported outright sale of the property between a buyer and seller. There the court gave the buyer thirty days to deposit with the court the purchase price for the property and "in case he fails to do so, said judgment and decree becomes void and without force...." *Id.* at 602, 99 P. at 111. The present case does not involve a transaction between the buyer and seller but involves a thirty-day option by the holders of a preemptive right. The court's decree, which provides the preemptors thirty days to meet the petitioners' purchase term, conforms to the purchase option contained in the parties' original contract. Moreover, here, unlike in *Thompson,* the trial court intended to issue an *interlocutory* decree directing the respondents to deposit the $48,000 purchase price with the clerk of the court within thirty days of the decree and also to file the Hales' stipulation to be bound by the decree within the same time. The decree was not to become final until after these two things had been done or until the thirty days had expired. The record shows that the stipulation was filed before the interlocutory decree was entered and that the deposit was made four days after the entry of the interlocutory decree. Only after the conditions were met did the decree become final. We conclude that *Thompson* is not controlling under these circumstances.

The decree granting respondents specific performance of the preemptive right under the 1972 contract is affirmed. Costs to respondents, Hancocks and Anderson. No attorney fees on appeal.

WALTERS, C.J., and BURNETT, J., concur.