969 P.2d 836

Harrison S. HILBERT and Kathleen Hogan Hilbert, husband and wife, Plaintiffs–Appellants,

v.

Frank H. HOUGH and Mary S. Hough, husband and wife, Defendants–Respondents.

No. 24007.

Court of Appeals of Idaho.

Dec. 10, 1998.

Johnson Olson, Chtd., Pocatello, for appellants. Ronald J. Jarman argued.

Lyon & Lyon, Pocatello, for respondents. Kenneth E. Lyon III argued.

SCHWARTZMAN, Judge.

The Hilberts appeal from the district court's order granting the Houghs' motion for summary judgment. For the reasons set forth below, we affirm.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In February of 1994, Harrison Hilbert and his wife Kathleen Hilbert (the Hilberts) entered into negotiations with Frank Hough and his wife Mary Hough (the Houghs) for the purchase of a five-acre parcel of land (the property) owned by the Houghs and located in Bannock County, Idaho. On July 7, 1994, the Hilberts signed an agreement for the purchase of the property from the Houghs. The property is described in the agreement as follows:

> A tract of land in the S½ of the NE¼ of Section 23, T. 8 S., R. 36 E., B.M., between the Portneuf River and the westerly line of Old Highway 91, south of the land owned by Dennis Hill, and containing approximately 5 acres.

In the next paragraph of the agreement, the parcel of land is more precisely defined:

1. *The exact boundaries of the tract, acceptable to both Sellers and Buyers, will be determined by a survey, obtained by the Buyers.* The north line of the tract shall be the south line of the land conveyance to Dennis Hill by the Sellers, which runs from a point upon the westerly line of the Old Oregon Trial Highway that is S. 01° 28' W., 2,098.82 feet along said line and S. 89° 25'18" E., 1,404.19 feet of the N.¼ corner of said Section 23, and runs S. 80° 10'20" W. to the center of the Portneuf River, from said point. The east line will be the westerly line of the Old Oregon Trial Highway. The south line will run northwesterly from the westerly highway line in such a manner as to permit the Sellers' continued use of a slack water meander bend in the Portneuf River for watering their stock, either by extending the east line to the south and running a straight line southwesterly to the River or by bending or angling the line around the watering area.

2. The cost of the survey, including the south line, will be paid by the Buyers, who will also fence the south line of the tract, which will constitute the mutual boundary between the lands of the Buyers and the Sellers.

(emphasis added). The Hilberts also deposited two thousand five hundred dollars ($2,500) with American Land Title Company as earnest money.

Subsequently, the property was surveyed and on September 6, 1994, the Hilberts' attorney submitted a letter and copy of the survey results identifying two possible southern boundary lines to the Houghs. In the letter, the Hilberts' attorney stated that before the boundary line was permanently staked, the Hilberts wanted the Houghs' "consideration and thinking on the location." On September 12, the Houghs sent a handwritten letter to the Hilberts' attorney stating that they were "not going to complete the proposed sale of our property to Mr. and Mrs. Hilbert." The Houghs indicated that there were several reasons for the decision, one of which was their "dissatisfaction with the proposed boundaries."

On September 14, the Hilberts' attorney sent a letter to the Houghs setting forth the reasons why the agreement was enforceable, informing the Houghs that the Hilberts had deposited the balance of the purchase price with American Land and Title, asking the Houghs to reconsider their decision not to proceed with the agreement, and suggesting that the Houghs consult with an attorney. Three days later the Houghs sent a letter to the Hilberts, informing them that "the property from the tree and the bend in the river north to the Hill property line is still for sale. If you are still interested in that parcel we would be willing to execute a sales agreement." On September 20, the Hilberts' attorney sent a letter to the Houghs rejecting the offer to purchase on the basis that the Hilberts would not be able to build a home on the property. The parties never reached an agreement with respect to the sale or purchase of a smaller parcel of property.

The Hilberts filed a complaint seeking specific performance of the agreement. The Houghs filed an answer denying the existence of an agreement to sell any specific piece of property to the Hilberts. As affirmative defenses, the Houghs alleged that the complaint failed to state a claim upon which relief could be granted and that there was no meeting of the minds or contract entered into by the parties regarding the property. After discovery was completed, the Hilberts filed a motion for summary judgment. On August 10, 1995, the district court issued a memorandum decision and order denying the Hilberts' motion on the basis that the property description was too indefinite to support specific performance. The district court certified that the order denying summary judgment was final as to the controlling issue of law in the case. The Hilberts then filed a notice of appeal which was later dismissed by the Idaho Supreme Court because it was not an appeal from a final judgment or order as required by I.A.R. 11(a).

The case was remanded back to the district court and the Houghs moved for summary judgment. The court held a hearing thereon and subsequently issued a memorandum decision and order granting the Houghs' motion for the reason that the prop-

erty description was ambiguous, incomplete and indefinite. The Hilberts filed this appeal, asserting that the district court erred in determining that the earnest money agreement was facially ambiguous and arguing that because a genuine issue of material fact existed as to the intent of the parties, summary judgment was improper.

## II.

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c); *Lawrence v. Jones,* 124 Idaho 748, 750, 864 P.2d 194, 196 (Ct.App.1993). On appeal, our standard of review is the same as that employed by the district court. *Lawrence,* 124 Idaho at 750, 864 P.2d at 196. We review the record and construe all facts in favor of the non-moving party to determine whether there are material issues of fact at issue which would preclude a grant of summary judgment. *Id.*

## III.

## ANALYSIS

**A. The District Court Properly Concluded That The Land Description Contained In The Earnest Money Agreement Was Too Ambiguous To Warrant Specific Performance**

The district court granted the Houghs' motion for summary judgment after determining that the land description in the earnest money agreement was incomplete and indefinite as to the southern boundary of the property to be conveyed and, therefore, unenforceable. The court noted that because the terms of the agreement created uncertainty as to exactly which piece of property was being conveyed, specific performance could not be ordered without the court supplying the missing boundary line.

On appeal, the Hilberts argue that the district court erred in determining that the land description contained in the agreement was ambiguous and incomplete. They contend that the court should have given meaning to the parties' intent rather than subjecting the land description "to the extreme of a literal and rigid logic." To this end, the Hilberts argue that although the survey produced two proposed southern boundaries rather than one mandatory boundary, because the three remaining boundaries were definite and defined, the district court should have ordered the Houghs to choose one of the two proposed boundaries and proceed with the property sale.

■ It is well settled that "ambiguous earnest money agreements will not support an award of specific performance or damages." *White v. Rehn,* 103 Idaho 1, 2, 644 P.2d 323, 324 (1982); *see also Matheson v. Harris,* 96 Idaho 759, 536 P.2d 754 (1975); *Luke v. Conrad,* 96 Idaho 221, 526 P.2d 181 (1974).

"An agreement for the sale of real property must not only be in writing and subscribed by the party to be charged, but the writing must also contain such a description of the property agreed to be sold, either in terms or by reference, that it can be ascertained without resort to parol evidence. Parol evidence may be resorted to for the purpose of identifying the description contained in the writing, with its location upon the ground, but not for the purpose of ascertaining and locating the land about which the parties negotiated, and supplying a description thereof which they have omitted from the writing."

*Allen v. Kitchen,* 16 Idaho 133, 142, 100 P. 1052, 1055 (1909), *quoting Craig v. Zelian,* 137 Cal. 105, 105, 69 P. 853, 853 (1902). Thus, parol evidence may not be utilized to supply the terms of an agreement but may be resorted to for the purpose of applying previously defined terms.

■ The agreement between the Houghs and Hilberts generally defines the property at issue as "[a] tract of land in the S½ of the NE¼ of Section 23, T. 8 S., R. 36 E., B.M., between the Portneuf River and the westerly line of Old Highway 91, south of the land owned by Dennis Hill, and containing approximately 5 acres." This general description sets the Portneuf River as the western

boundary of the property, while the eastern boundary is defined as the westerly line of the highway. A more specific description of the land attempts to delineate these boundaries and clearly defines the northern boundary of the parcel:

> The north line of the tract shall be the south line of the land conveyance to Dennis Hill by the Sellers, which runs from a point upon the westerly line of the Old Oregon Trial Highway that is S. 01° 28' W., 2,098.82 feet along said line and S. 89° 25'18" E., 1,404.19 feet of the N.¼ corner of said Section 23, and runs S. 80° 10'20" W. to the center of the Portneuf River, from said point. The east line will be the westerly line of the Old Oregon Trial Highway. The south line will run northwesterly from the westerly highway line in such a manner as to permit the Sellers' continued use of a slack water meander bend in the Portneuf River for watering their stock, either by extending the east line to the south and running a straight line southwesterly to the River or by bending or angling the line around the watering area.

It is undisputed from this description that the northern boundary of the property is the southern boundary line of Dennis Hill's property. Although the agreement purports to establish the Portneuf River as the western boundary and the westerly line of the highway as the eastern boundary of the parcel, it fails to provide the north-south distances of these boundary lines. Depending on the length of the eastern and western boundary lines, the southern boundary could be either of the two lines proposed by the survey, or several other possible permutations. Given this lack of definiteness with respect to three of the four boundaries, the actual parcels of land that could be surveyed from the legal description become problematic.[1]

The indefiniteness of the agreement here is analogous to the property description in *White v. Rehn*, 103 Idaho 1, 644 P.2d 323 (1982). In *Rehn*, the property at issue was a 960 acre parcel of land that was part of a 9,000 acre dry farm. The purchasers and

seller signed an earnest money receipt and offer to purchase, in which the property was described as "all land west of road running south to the [seller's] farmstead containing 960 acres Exact acreage to be determined by survey. Price to be adjusted up or down at the rate of $243.00 per acre Cassia County, State of Idaho." *Id.* at 3, 644 P.2d at 325. When the seller withdrew the offer and declined to proceed with the sale, the purchasers filed a complaint seeking specific performance or damages. The seller later moved for summary judgment, which was granted by the district court. On appeal, the Idaho Supreme Court affirmed, holding that there was "nothing in the description with which to *pinpoint exactly* which 960 acres was to be transferred. As such, this description is ambiguous on its face and will not support an award for specific performance or damages." *Id.* at 3, 644 P.2d at 325 (emphasis added).

Similarly, the description of the Hough property as set forth in the earnest money agreement is ambiguous and incomplete on its face and cannot be pinpointed with exactitude. There is only one boundary of the property truly capable of definition with certainty, and that is the northern boundary. To enforce the agreement would require the trial court to supply the three indefinite boundary lines, and not simply apply contractual terms. In actuality, this is little more than an agreement to make an agreement. The exact boundaries were to be determined by survey, and then accepted by both the Hilberts and Houghs. This never occurred. Where an agreement is not sufficiently definite to enable a court to give an exact meaning, or where an essential element is reserved for future agreement of both parties, there is generally no legal obligation created until such future agreement is entered into. *See, e.g., Jackson v. Grant*, 890 F.2d 118, 120–21 (9th Cir.1989).

Accordingly, we concur with the district court's conclusion that the agreement is too ambiguous and indefinite to warrant an award of specific performance and affirm the

---

1. At oral argument, counsel for the Hilberts readily conceded that there were far more than just two possible boundary configurations that could be surveyed to comply with the general description of the proposed five-acre tract.

grant of summary judgment in favor of the Houghs.

## B. The Houghs Are Entitled To Attorney Fees On Appeal

 The agreement between the Hilberts and Houghs, with respect to attorney fees, provides as follows: "Should either of the parties institute litigation to determine any rights or duties under this agreement, the prevailing party will be entitled to costs, including reasonable attorney fees." The Hilberts pursued this appeal, challenging the district court's grant of summary judgment in favor of the Houghs. The Houghs have responded successfully and qualify as the prevailing party in this action. It is of no consequence that the underlying contractual obligation is unenforceable. A prevailing party may recover attorney fees even though no liability under a contract was established or where no contract was, in fact, ever formed. *See Farmers Nat'l Bank v. Shirey,* 126 Idaho 63, 73, 878 P.2d 762, 772 (1994); *Konic International Corporation v. Spokane Computer Services, Inc.,* 109 Idaho 527, 708 P.2d 932 (Ct.App.1985). Thus, the Houghs are entitled to an award of attorney fees on appeal.

### IV.

### CONCLUSION

For the reasons set forth above, we affirm the district court's grant of summary judgment and award costs and attorney fees on appeal to the Houghs.

Judge PERRY and Judge Pro Tem ST. CLAIR, concur.