980 P.2d 574

**Scott KARTERMAN, Plaintiff–Counterdefendant—Appellant,**

v.

**Mary Gard JAMESON, Defendant–Counterclaimant—Respondent,**

No. 24590.

Court of Appeals of Idaho.

May 7, 1999.

Review Denied July 28, 1999.

Newman & Zollinger, Rupert; Roger E. Crist, Ketchum, for appellant.

Roger E. Crist argued. Hawley, Troxell, Ennis & Hawley, Boise, for respondent. Edward A. Lawson argued.

SCHWARTZMAN, Judge.

Scott Karterman appeals from the district court's order of summary judgment and award of attorney fees in Mary Jameson's favor. For the reasons set forth below, we affirm in part and reverse in part.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Scott Karterman and his wife filed a petition for bankruptcy which resulted in the disposition of their real property at a trustee's sale. The property consisted of a residence, a separate parcel which was used as a road, and an additional parcel which bordered the river. Mary Jameson, in her capacity as trustee of the Mary Gard Jameson Trust, purchased the property for the sum of $360,000.

On June 11, 1997, Karterman and Jameson entered into an agreement which granted Karterman possession of the residence and land parcel utilized as a road (the property), while Jameson retained the parcel which bordered the river. The agreement was memo-

rialized on a preprinted "Real Estate Purchase and Sale Agreement and Receipt for Earnest Money," with Karterman filling in some of the provisions by hand. The agreement, in relevant part, provides as follows:

(d) The parties agree that $3,000 due upon the signing of the option this agreement including (1,500 deposit & 1500 1st mo. rent).

3. TOTAL PURCHASE IS Two hundred Thousand and no/100s dollars.

Payable as follows: subject to sellers attorney's approval of documents & formal lease option agreement within 15 days & Jamison acquiring title.

. . . .

5. OTHER FINANCING, TERMS AND/OR CONDITIONS: In consideration of the above. Scott Karterman and Mary Jameson agree to the following lease option agreement. Karterman shall pay rent per month of $1500 and shall have the right to purchase the above described property within a one year time period for: Two hundred thousand and 00/100 cash within one year.

(Errors in original.). Karterman immediately took possession of the property,[1] but did not pay the $1,500 deposit or the $1,500 rental payment at the time the agreement was signed.

On June 25, 1997, Jameson's attorney sent a letter to Karterman informing him that Jameson would not proceed with the transaction outlined in the "Real Estate Purchase and Sale Agreement and Receipt for Earnest Money." Enclosed with the letter was a check made out to Karterman for $1.00, the amount Karterman had paid for the option. In response, on July 16, Karterman's attorney sent a letter to Jameson's attorney informing him that Karterman intended to proceed with the transaction. Karterman's attorney thereafter sent a proposed lease-option agreement to Jameson's attorney for approval and informed counsel that upon execution of the document, Karterman would pay the deposit and first month's rental pay-

1. It appears from the record that Karterman never moved out of the home but simply re- mained in possession upon signing the agreement with Jameson.

ment. Karterman's attorney also returned the $1.00 check.

On August 7, 1997, Karterman filed a complaint seeking specific performance of the June 11 agreement. Jameson responded with a verified answer and counterclaim, raising a number of affirmative defenses. Subsequently, Jameson filed a motion for summary judgment and Karterman filed a cross-motion for summary judgment.

A hearing on both parties' motions for summary judgment was held on March 16, 1998. The district court heard argument and at the conclusion of the hearing determined that there was no meeting of the minds, the agreement was nothing more than an agreement to agree, it was incomplete and uncertain regarding material terms, it was not intended to be a final statement of the terms of the lease-option agreement, and it was otherwise unenforceable due to the parties' failure to fulfill certain express conditions.

Accordingly, the court granted Jameson's motion for summary judgment. Thereafter, the court entered an order awarding attorney fees to Jameson in the amount of $15,-423.50 pursuant to I.R.C.P. 54(e)(1) and (5), finding that there was both a contractual and statutory basis for the award and that Jameson was the prevailing party. Karterman appeals.

## II.

### STANDARD OF REVIEW

██ Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c); *Lawrence v. Jones*, 124 Idaho 748, 750, 864 P.2d 194, 196 (Ct.App.1993). When this Court reviews a trial court's grant of a motion for summary judgment, we employ the same standard utilized by the trial court. *W.O. Kepler v. WHW Management, Inc.*, 121 Idaho 466, 471, 825 P.2d 1122, 1127 (Ct.App.1992). When the parties file cross motions for summary judgment "relying on the same facts, issues, and theories, the parties essentially stipulate that

there is no genuine issue of material fact which would preclude the district court from entering summary judgment." *Eastern Idaho Agric. Credit Ass'n v. Neibaur*, 130 Idaho 623, 626, 944 P.2d 1386, 1389 (1997). If the district court sits as the trier of fact, it may draw reasonable inferences based upon the evidence before it and may grant summary judgment despite the possibility of conflicting inferences. *Cameron v. Neal*, 130 Idaho 898, 900, 950 P.2d 1237, 1239 (1997).

## III.

### ANALYSIS

**A. The District Court Did Not Err In Granting Jameson's Motion For Summary Judgment After Concluding That Specific Performance Was Improper**

██ In his pleadings, Karterman requested that the court order specific performance of his agreement with Jameson. "Specific performance is an extraordinary remedy developed by courts of equity to provide relief when the legal remedies are inadequate." *Hancock v. Dusenberry*, 110 Idaho 147, 152, 715 P.2d 360, 365 (Ct.App. 1986), *citing* J. CALAMARI & J. PERILLO, CONTRACTS § 16–1 (2d ed.1977). It is generally presumed that an aggrieved party in a contract for the sale or lease of land does not enjoy an adequate remedy at law and is entitled to specific performance. *Id.* However, the equitable remedy of specific performance is not available to enforce ambiguous or incomplete earnest money agreements which do not contain a final statement of the terms of the conveyance. *White v. Rehn*, 103 Idaho 1, 2, 644 P.2d 323, 324 (1982); *Matheson v. Harris*, 96 Idaho 759, 536 P.2d 754 (1975); *Luke v. Conrad*, 96 Idaho 221, 526 P.2d 181 (1974); *W.O. Kepler*, 121 Idaho at 479, 825 P.2d at 1135.

██ Karterman asserts that the court erred in granting Jameson's motion for summary judgment after concluding that the parties' failure to fulfill a condition precedent rendered the agreement incapable of specific performance. The unfulfilled condition precedent identified by the court was a hand-

written provision which provided that the agreement was "subject to sellers [sic] attorney's approval of documents & formal lease option agreement within 15 days & Jamison acquiring title." Karterman asserts that rather than concluding that this provision constituted a condition precedent, the court should have deemed this clause ambiguous and sent the case to the jury[2] to determine the parties' intent.

■ Where an agreement for the sale of real property manifests the parties' intent to sign a more formal document in the future and no such document is signed, the agreement will not support an award of specific performance as a matter of law. *Luke,* 96 Idaho at 222, 526 P.2d at 182; *W.O. Kepler,* 121 Idaho at 479, 825 P.2d at 1135. Here, the language "subject to sellers [sic] attorney's approval of documents & formal lease option agreement within 15 days," as set forth in paragraph 3 of the form, indicates that the parties intended Karterman's attorney to submit more formal documents for Jameson's attorney's approval.

This interpretation is bolstered by the lease-option provision of the agreement which required Karterman to pay $3,000 to Jameson "upon the signing of *the option* agreement." (Emphasis added.). Prior to Karterman's alterations, this phrase provided for the immediate payment of a $1,500 deposit and $1,500 first month's rent "upon the signing of *this* agreement." (Emphasis added.). Karterman did not pay Jameson $3,000 at the time the parties signed the agreement and the statement, as altered, contemplates a future option agreement separate from the agreement signed by the parties on June 11, 1997. Given these provisions, the district court did not err in determining that the parties intended to sign a more formal agreement in the future.

Karterman's assertion that this language creates an ambiguity rather than a condition precedent stems from his interpretation of the clause "subject to sellers [sic] attorney's approval of documents & formal lease option agreement within 15 days." He argues that a reasonable interpretation of this clause is that neither party could decline to proceed with the lease-option agreement on the advice of an attorney and that the parties' attorneys could only approve or disapprove of the underlying documents. Karterman argues that the proper interpretation of this clause, however, is less important than the fact that it requires interpretation. That is, the fact that Jameson construes this clause to require her attorney's approval of the documents and the underlying transaction, while Karterman interprets this clause to permit Jameson's attorney's approval of the documents only, demonstrates the ambiguity of the clause and requires submission to the finder of fact for interpretation.

■ We disagree. If we were to adopt Karterman's interpretation, neither of the parties' attorneys could object to the inclusion of provisions not previously agreed to by the parties because the attorneys would only have authority to approve the format and form of the documents, not the substance. We decline to embrace such a constrained reading. The agreement between Karterman and Jameson is no more than an agreement to agree in the future and is therefore unenforceable for purposes of specific enforcement. *See Hilbert v. Hough,* 132 Idaho 203, 969 P.2d 836 (Ct.App.1998). Thus, we affirm the district court's conclusion that the form involved here was incapable of specific performance as a matter of law.[3]

**B. Jameson's Acceptance Of Lease Payments From Karterman Did Not Estop Her From Denying The Enforceability Of The Agreement**

Assuming *arguendo* his agreement with Jameson was an agreement to agree, Karterman claims that Jameson's acceptance of benefits stemming from the lease portion of the agreement estop her from now denying

---

2. Counsel conceded at oral argument that Karterman's claim for specific performance is not triable to a jury, but only to the court.

3. We note that the disputed provisions of the agreement are handwritten clauses which have been patch-worked together over a preprinted

"Real Estate Purchase and Sale Agreement and Receipt for Earnest Money" form. This form was certainly not intended for use in complex real estate transactions, such as the lease-option agreement at issue here.

the enforceability of the option portion of the agreement. For this proposition, Karterman relies on the "THREE DAY NOTICE TO QUIT OR PAY RENT" served on him by Jameson on August 28, 1997.[4] In relevant part, the notice states:

> YOU, AND EACH OF YOU, ARE HEREBY NOTIFIED that you are in default of the Lease with the owner of said premises, Mary Jameson, in that you have failed to pay rent for the leased premises in the amount of $1,500.00 per month, *pursuant to that Lease Agreement entered into between the parties on June 11, 1997. The total amount due and owing under said agreement is $3,000.*

(Emphasis added.). Given Jameson's acknowledgment of the lease provision of the agreement in this notice and her acceptance of benefits under the agreement, i.e., rent, Karterman asserts that the doctrine of quasi estoppel precludes her from now denying that the parties had an enforceable option agreement.

> "The doctrine classified as quasi estoppel has its basis in election, ratification, affirmance, acquiescence, or acceptance of benefits; and the principle precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by him. The doctrine applies where it would be unconscionable to allow a person to maintain a position inconsistent with one in which he acquiesced, or of which he accepted a benefit."

*KTVB, Inc. v. Boise City,* 94 Idaho 279, 281, 486 P.2d 992, 994 (1971), *quoting Clontz v. Fortner,* 88 Idaho 355, 364–65, 399 P.2d 949, 954 (1965). In order for quasi estoppel to be applicable, "the person against whom it is sought to be applied [must have] previously taken an inconsistent position, with knowledge of the facts and his rights, to the detriment of the person seeking application of the doctrine." *Id.* at 282, 486 P.2d at 995.

The elements of quasi estoppel are lacking in this case. First, Jameson received no real benefit from acknowledging the agreement in the notice to quit or pay rent that she would not otherwise have received. Because a lease of real property for one year or less need not be in writing to be enforceable, I.C. § 9–505(4), Jameson could have enforced Karterman's obligation to pay rent without reliance on the agreement. We note that the monthly rental payments Jameson now receives from Karterman are the result of a court order rather than the lease-option agreement. Second, Karterman was informed almost immediately after the notice was served on him that such service was in error; thus, he could not have detrimentally changed his position in reliance on Jameson's reference to the agreement in this notice. Again, we emphasize that Karterman had actual knowledge as of June 25, 1997, that Jameson did not intend to proceed with the transaction and that Jameson considered the lease-option agreement unenforceable. Jameson thereafter refused to accept Karterman's monthly payments when he included references to the payments being made in accordance with the "lease-option agreement" on the face of the cashier checks. It was only when the court issued an order requiring Karterman to make monthly payments and explicitly directed that Karterman's references to the agreement be legally inoperative that Jameson accepted Karterman's payments. Under these circumstances, we find that Karterman's reliance on the doctrine of quasi estoppel is misplaced.

## C. The District Court Erred In Awarding Attorney Fees To Jameson

Karterman argues that the district court erred in awarding attorney fees to Jameson pursuant to Rules 54(e)(1) & (5) of the Idaho Rules of Civil Procedure, after concluding that there was both a contractual and statutory basis for the award. Rule 54(e)(1) provides that "[i]n any civil action the court may

---

4. According to Jameson, this notice was mistakenly served on Karterman. However, Jameson later filed a motion to compel the payment of rent. At the hearing on the motion to compel, it was revealed that Karterman had attempted to make payments but that such payments had been refused by Jameson because Karterman noted on the "memo" line of the cashier's checks that the payment was being made in accordance with the lease-option agreement. The parties subsequently stipulated that Karterman would pay Jameson the deposit plus monthly rental payments commencing June 18, 1997, and during the pendency of this appeal.

award reasonable attorney fees to the prevailing party or parties as defined in Rule 54(d)(1)(B), when provided for by any statute or contract."

### 1. There was no contractual basis for the award of attorney fees

■ Karterman argues that a contractual basis for an award of attorney fees is lacking because the operative language merely grants to the seller those rights which she already had pursuant to law or court rule. The attorney fees provision, found in paragraph 14 of the agreement, provides as follows:

> Seller may pursue any legal remedies against Buyer which are available to Seller under Idaho law and shall be entitled to an award of attorney's fees as provided by law or court rule.

We have previously held that even though a contract is not specifically enforceable, an attorney fees provision in the contract may nevertheless be enforceable. *Hilbert v. Hough*, 132 Idaho 203, 207, 969 P.2d 836, 840 (Ct.App.1998). The attorney fees provision in *Hilbert* provided: "Should either of the parties institute litigation to determine any rights or duties under this agreement, the prevailing party will be entitled to costs, including reasonable attorney fees." *Id.* The provision here, however, is readily distinguishable because it provides no independent contractual entitlement to an award of fees, but simply authorizes such when "provided by law or court rule." *See Joseph C.L.U. Ins. Assoc. v. Vaught*, 117 Idaho 555, 558, 789 P.2d 1146, 1149 (Ct.App.1990). Accordingly, Jameson must demonstrate an entitlement to attorney fees pursuant to law or court rule. *Id.*

### 2. Jameson is not entitled to attorney fees pursuant to law or court rule

Karterman also argues that the district court erred in awarding Jameson attorney fees pursuant to I.C. § 12–120(3), which permits the award of attorney fees in cases involving commercial transactions, because their agreement involved the purchase of residential property and is not a commercial transaction in accordance with this section. However, Jameson asserts that because Karterman claimed attorney fees pursuant to

I.C. §§ 12–120 and –121 in his complaint, he should be bound thereby even though no commercial transaction was proven and no finding of frivolousness was made by the district court.

■ The statutory grounds for an award of attorney fees are set forth in I.C. §§ 12–120 & –121. Pursuant to I.C. § 12–120(3), attorney fees in a civil action are awarded by the court to the prevailing party and are taxed and collected as costs. However, a party may only recover attorney fees in a property transaction pursuant to subsection (3) if the transaction is commercial. A commercial transaction is defined as "all transactions except transactions for personal or household purposes." I.C. § 12–120(3). A transaction involving the sale and purchase of personal residential property is not a "commercial transaction" within the meaning of the statute. *Cf. Herrick v. Leuzinger*, 127 Idaho 293, 306, 900 P.2d 201, 214 (Ct.App. 1995) (concluding where the purpose of a lease agreement was to operate a commercial cattle ranch, and the parties did not maintain a home on the ranch property, the lease was a commercial transaction and attorney fees were awardable pursuant to I.C. § 12–120(3)). Thus, because the lease-option agreement at issue here involves the lease and purchase of a dwelling for residential purposes, attorney fees cannot be awarded pursuant to this section.

■ Attorney fees may be awarded to the prevailing party in a civil action pursuant to I.C. § 12–121, which provides that "[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties, provided that this section shall not alter, repeal or amend any statute which otherwise provides for the award of attorney's fees." Rule 54(e)(1) of the Idaho Rules of Civil Procedure supplements this statute, providing that attorney fees "may be awarded by the court only when it finds, from the facts presented to it, that the case was brought, pursued or defended frivolously, unreasonably or without foundation; ..." *See also Noble v. Fisher*, 126 Idaho 885, 891, 894 P.2d 118, 124 (1995). Here, the district court made no findings that Karterman brought,

pursued or defended the case frivolously, unreasonably or without foundation. Thus, attorney fees are not properly awardable pursuant to I.C. § 12–121.

Because Jameson was not entitled to attorney fees pursuant to law or court rule, we conclude that the district court erroneously awarded Jameson attorney fees. Accordingly, we vacate the district court's award of attorney fees to Jameson. In addition, because we do not find Karterman's appeal to have been pursued frivolously, unreasonably, or without foundation, Jameson is not entitled to attorney fees on appeal pursuant to I.C. § 12–121.

## IV.

## CONCLUSION

We affirm the district court's order of summary judgment in Jameson's favor but vacate the award of attorney fees. Each party shall bear their own costs and attorney fees on appeal.

Chief Judge PERRY and Judge Pro Tem HORTON, concur.