6 P.3d 835

**Paul B. SNYDER and Laurie G. Snyder, husband and wife, Plaintiffs–Appellants,**

v.

**Ludek Charles MINIVER and Jindra Miniver, husband and wife, Defendants–Respondents.**

No. 25418.

Court of Appeals of Idaho.

May 11, 2000.

Review Denied Aug. 22, 2000.

586

McGrath, Marotz Smith, Idaho Falls, for appellant. Bryan D. Smith argued.

Mulberry Law Office, Ririe, for respondent. William H. Mulberry argued.

SCHWARTZMAN, Judge.

Paul and Laurie Snyder (the Snyders) appeal from the district court's ruling on summary judgment that an earnest money agreement signed by the Snyders and Lou and Jindra Miniver (the Minivers) was incomplete and unenforceable. We affirm.

## I.

### FACTS AND PROCEDURE

In 1997, the Snyders became interested in buying a parcel of land called Taylor Mountain owned by the Minivers. On July 17, the Snyders made a written offer to the Minivers through Karin Fry, the Minivers' real estate agent for that property. This offer indicated that the Snyders would later execute a contract for deed. On July 21, the Minivers made a counteroffer to the Snyders. The Snyders signed the counteroffer and returned it to the Minivers on July 22.

The following day, the Minivers and the Snyders met Fry at her office to discuss the sale of Taylor Mountain. During this meeting, the Minivers signed the counteroffer. The Minivers understood at this time that the agreement consisted of the Snyders' original offer as modified by the counteroffer. The offer and counteroffer together are hereafter referred to as the earnest money agreement or EMA.

The Minivers thereafter had their attorney prepare a contract for deed, which in addition to escrow, payment and security terms, included obligations relating to a power line easement and the cutting of trees on the property. The Snyders refused to sign this document because it encompassed terms not found in the EMA. These additional terms were not acceptable to the Snyders, so they prepared a list of changes to be incorporated into the contract for deed. The Minivers did not accept these changes, and the Snyders retained an attorney to draft their own con-

tract for deed. The Snyders knew that a contract for deed was required by the EMA and recognized that it would provide the Minivers' security.

The Snyders thereafter submitted their contract for deed, which also contained additional terms not included in the EMA, but the Minivers refused to sign it. The EMA set the closing date as August 15, 1997, but the Minivers extended the closing date to August 27 in hopes that the parties could come to a resolution. The Minivers decided that they would not close on the property unless the Snyders accepted the terms of the contract for deed prepared by their attorney. The Snyders did not appear for the closing on August 27.[1] Upon demand of the Snyders, the Minivers returned the $1,000 which the Snyders had paid as earnest money under the EMA.

The Snyders filed their complaint eight months later seeking specific performance of the EMA or damages for breach of contract. The Snyders made a motion for partial summary judgment as to the specific enforceability of the EMA. Thereafter, the Minivers filed their motion for partial summary judgment on the issue of specific enforcement. A hearing was held and the district court eventually granted the Minivers' motion for summary judgment. The Snyders appeal claiming that (1) the EMA was sufficiently complete to be enforceable and (2) there were genuine issues of material fact that precluded a grant of summary judgment.

## II.

### THE DISTRICT COURT DID NOT ERR IN FINDING THAT THE EARNEST MONEY AGREEMENT BETWEEN THE PARTIES WAS INCOMPLETE AND UNENFORCEABLE

#### A. Standard of Review

In an appeal from an order granting summary judgment, appellate courts use the same standard of review as used by the district court in ruling on a motion for summary judgment. *Aberdeen–Springfield Canal Co. v. Peiper*, 133 Idaho 82, 86, 982 P.2d 917, 921 (1999). Summary judgment is proper only when review of the pleadings, depositions, affidavits and admissions on file reveals no genuine issue of material fact. *Id.* When considering a motion for summary judgment, a court "liberally construes the record in a light most favorable to the party opposing the motion and draws all reasonable inferences and conclusions in that party's favor." *Brooks v. Logan*, 130 Idaho 574, 576, 944 P.2d 709, 711 (1997).

When, however, the parties file cross motions for summary judgment "relying on the same facts, issues and theories, the parties essentially stipulate that there is no genuine issue of material fact which would preclude the district court from entering summary judgment." *Karterman v. Jameson*, 132 Idaho 910, 913, 980 P.2d 574, 577 (Ct.App.1999). Additionally, where the trial court is the trier of fact—as in the instant case—it may draw reasonable inferences based upon the evidence and may grant summary judgment despite the possibility of conflicting inferences. *Id.*

#### B. Analysis

We are charged with deciding whether the contract terms stated in the offer and counteroffer are sufficiently certain and definite to allow specific performance of the EMA. For land sale contracts, the minimum requirements for specific performance to be allowed are typically the parties involved, the subject matter thereof, the price or consideration, a description of the property and all the essential terms of the agreement. *Lawrence v. Jones*, 124 Idaho 748, 751, 864 P.2d 194, 197 (Ct.App.1993). Hereinafter, we set forth those circumstances that lead to our conclusion that specific performance was properly denied as a matter of law.

---

1. Karin Fry stated in her unrebutted affidavit that she and Jindra Miniver waited for the Snyders to arrive at Idaho Title in Idaho Falls—the designated place for closing. When the Snyders did not arrive as scheduled, Fry telephoned Laurie Snyder. Laurie informed Fry that if the Minivers refused to sign the contract for deed prepared by the Snyders' attorney, then the agreement was off.

### 1. Contract For Deed

█ The terms of the EMA itself indicate that it was not intended to be a final expression of the parties' agreement. The Snyders' offer provided "BUYER to execute a Contract for Deed or a note secured by a Deed of Trust or Mortgage on the property, in favor of SELLER, for the balance of $ 200,000." In their offer submitted to the Minivers, the Snyders placed an "X" in the box directly before "Contract for Deed". The Minivers made a counteroffer, which was accepted by the Snyders and the two documents together became the EMA, but no contract for deed was ever agreed upon. Where an agreement for the sale of real property manifests the parties' intent to sign a more formal document in the future and no such document is signed, the agreement militates against an award of specific performance. *Karterman*, 132 Idaho at 914, 980 P.2d at 578. The above quoted term indicates that the land transaction was not complete after execution of the EMA and a contract for deed would be subsequently required.

### 2. Competing Terms Of The EMA

█ The Snyders claim that the EMA was intended to be the final expression of the parties' land transaction, as evidenced by a term that states "ENTIRE AGREEMENT: This Agreement contains the entire Agreement of the parties respecting the matters set forth." However, this term was not individually fashioned or arrived at by the parties, but was simply a "boilerplate" term listed in the pre-printed generic forms. Moreover, we conclude that the above term and the "contract for deed" term are neither mutually exclusive, nor even inconsistent. The EMA may very well have been intended to be the "entire agreement of the parties respecting the matters set forth," but one of the terms of that agreement was that a contract for deed be executed in the future, which might cover additional matters not "set forth" in the EMA.

### 3. Terms of Financing and Security

█ The EMA stated the purchase price and the amount to be paid at closing. The Minivers agreed to carry a $213,000 loan at a 7.25 per cent interest rate, payable in installments over ten years with a balloon payment after the ten-year period. The amount and due date for the Snyders' monthly payments were established by the EMA. The EMA adequately addressed who would pay for costs of escrow, title insurance costs and well inspection costs. The Minivers were given an opportunity to make amendments and changes to the Snyders' offer through their counteroffer and did so. All four parties then signed the counteroffer, thus incorporating into the offer the changes and amendments. The Snyders therefore assert that the agreement was sufficiently certain to allow specific performance and the contract for deed was simply a formality to clarify the terms of the EMA. However, at his deposition, Paul Snyder admitted that a contract for deed was necessary "to specify the financial conditions" and that the terms of the EMA alone provided no measure of security to the Minivers for the sale of their land. Laurie Snyder also acknowledged that the contract for deed was to be the Minivers' security for the land sale.[2] This further evidences some measure of uncertainty as to essential terms of the agreement, thus precluding specific performance. *Lawrence*, 124 Idaho at 752, 864 P.2d at 198 (1993) (holding a land sale contract unenforceable "because of the indefinite security provision").

### C. Summary

This case does not involve the simple sale and purchase of a small piece of real estate. The instant transaction has many levels of complexity. It was originally meant to consist of a down payment by the Snyders, with the Minivers carrying a loan for approxi-

---

2. The Snyders suggest that we order specific performance of the earnest money agreement and simply fill in the missing terms of security and financing. We refuse this invitation to speculate as to what terms of financing and security are "standard" in complex land transactions, especially where there exists a high degree of individuality and uniqueness as to the land, appurtenant easements and the agreement itself. Any attempt to dictate agreeable terms of financing and security for this transaction would amount to our rewriting the contract.

mately $200,000, amortized over ten years with a final balloon payment from the Snyders. The transaction also involved an existing easement for a power line that supplied power to the Taylor Mountain property. The easement was contingent upon providing power to an adjacent piece of property owned by a neighbor. The Minivers were at risk of losing their power line right of way and all power supply to adjacent property they were retaining, as well as the Taylor Mountain property which would secure the Snyders' performance, if the Snyders were to discontinue supplying power to the adjoining property. This term was not adequately addressed in the EMA. Also, the parties orally agreed that the Snyders would not cut any trees off the property for commercial sale, but this term was never addressed in the EMA. In addition, there were many items of personal property that were to be included in the sale of this parcel. The complexity of the instant transaction is further evidenced by the parties' negotiations surrounding the contract for deed, which included several varied terms and conditions.

The parties contemplated from the beginning that there would be a subsequent contract for deed to address additional financial and security terms. The parties continued to negotiate potential terms of the agreement after the time for closing elapsed. The earnest money was eventually returned at the request of the Snyders.

In *Luke v. Conrad*, 96 Idaho 221, 526 P.2d 181 (1974), the parties signed an earnest money agreement for a land sale. The agreement contemplated that a land sale contract would be entered into by the parties—much like the instant case contemplated that the parties would enter into a contract for deed. No land sale contract was ever agreed to and the parties eventually made cross motions for summary judgment—also like the instant case. The Idaho Supreme Court, in refusing to grant specific performance, cited to a passage of the agreement that "shows that [the EMA] contemplated that a land sale contract would be entered into by the parties which would include the details of the financing and the conveyance." The Court held that "since the Earnest Money Agreement was incomplete and not a final statement of the terms of conveyance, the trial court erred as a matter of law in ordering specific performance." *Luke*, 96 Idaho at 222, 526 P.2d at 182.

The instant transaction was a complicated land sale, therefore warranting an additional measure of certainty and specificity in its terms. *Karterman*, 132 Idaho at 914, 980 P.2d at 578. In contrast to this precept, however, the parties chose to use generic pre-printed forms to facilitate their transaction; forms that make it difficult to take account of the specifics and idiosyncrasies of their individual transaction. These types of forms were not intended for use in complicated land agreements. *Id.* at n. 3.

Given all of the above circumstances, we are left to conclude that the instant EMA contemplated an "agreement to agree" on further material terms in the future. Hence, it cannot be the subject of a specific enforcement action and the Minivers were entitled to summary judgment as a matter of law.

## III.

## ATTORNEY FEES

■ The instant earnest money agreement provides that "if either party initiates or defends any arbitration or legal action or proceedings, which are in any way connected with this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party reasonable costs and attorney fees, including such costs and fees on appeal." The Minivers were the prevailing party below and are the prevailing party on this appeal. It is immaterial that the underlying contractual obligation was unenforceable. *Hilbert v. Hough*, 132 Idaho 203, 207, 969 P.2d 836, 840 (Ct.App.1998). Accordingly, the Minivers are entitled to their reasonable attorney fees on appeal. *Id.*

## IV.

## CONCLUSION

For the reasons stated above, we conclude that the parties' earnest money agreement was not specifically enforceable because it was not sufficiently certain and definite in all

of its essential terms. We further conclude that summary judgment was properly granted to the Minivers by the district court because no genuine issue of material fact existed once it was determined that the earnest money agreement was not specifically enforceable as a matter of law. The Minivers are awarded their attorney fees and costs on appeal.

Chief Judge PERRY and Judge LANSING concur.